SHEPHERD AND ANOTHER v. WHITE, GUARD'N, AND ANOTHER.

Where the father paid two-thirds of the purchase money for certain land, and an absolute deed (to which he was a witness) to the same was made to his son, the presumption is that the money so paid was an advancement to the son; but this presumption may be explained or rebutted by proof that such payment was not intended as an advancement.

Where there is a resulting trust and the nominal grantee holds the land for the use of the real purchaser, the trustee cannot acquire upon the land a homestead unincumbered by the trust.

Where the son declared, in what purported to be his last will, that his father had paid two-thirds of the purchase money for the land on which he, the son, was then residing, (the deed being taken in the name of the son,) and that the father should take the land and pay to his, the son's, representatives the one-third of the purchase money, it was held that the declaration was admissible against the wife and children, who claimed the property as a homestead, and that it was conclusive against them that the two-thirds were paid by the father, and that it was not paid by him as an advancement to the son, and that the son held the land in trust for the father, the latter paying to the representatives of the son, the one-third of the purchase money.

It is the province of the Court and not of the jury to construe and determine the legal effect of instruments of writing.

Error from Montgomery. The deed to W. W. Shepherd, Jun'r, was dated May 5th, 1846. W. W. Shepherd and Phebe Shepherd, one of the plaintiffs, were married previous to that date. The reading of the will was objected to by the plaintiffs, and the objection overruled. At the request of the defendants the Judge charged the jury as follows:

"If a person pays the purchase money for lands, and the "title is taken in the name of another, it is a resulting trust, "by virtue of which the one in whose name the title is taken, "is a naked trustee, the right being in the one who pays the "consideration.

"If the father pays for the land, and the deed is taken in "the name of the son, this would be presumed to be an ad-"vancement; this presumption is rebutted by any written "declaration of the son to the contrary.

"If this transaction between the two Shepherds was a re-
"sulting trust, the right to the land passed into the father and
"not into the son; and the wife of the younger Shepherd
"could not have any other homestead-right in the land than
"her husband had.

"The homestead-right belongs as much to the husband, as
"the wife; and she could not acquire it before her husband."

The other facts will be found in the opinion.

*Yoakum & Branch*, for plaintiffs in error. This cause has
been before this Court already; (10 Tex. R. 72;) and is again
brought because of the entire disregard by the Judge *a quo*,
as plaintiffs in error believe, of the opinion given at the for-
mer hearing.

Admitting that the Court below had given all our charges,
the verdict is directly opposed to them; and especially the last
charge asked by us, in the language of this Court.

*N. H. Davis*, for defendant in error, respectfully contends
that the District Court did not err in refusing the fifth charge
asked by defendants below. To constitute a resulting trust
between father and son, two things (at least) are necessary,
1st. The father must have paid (out of his own and not the
son's means) the purchase money. 2nd. The intent that
it should be a resulting trust, must have existed at the time of
the purchase and conveyance. The burthen of proof is with
those who would establish the resulting trust. (Am. Ch. Dig.,
Vol. 3, p. 398.) These facts must be proved to the satisfaction
of the jury. (Am. Ch. Dig. TRUSTS.) To have given said fifth
charge, would have withdrawn the investigation of the fact of
the payment of the purchase money, from the jury. The deed
from Lindley says that the purchase money was paid by the son,
of which fact the father was an attesting witness. The will of
the son says, in substance, that the father had paid and secured
to be paid all but the last payments, for the place the son then

resided on; and that the father had agreed with him, probably at the time of making the will, to pay them. From the oral evidence (Hays testimony) it is uncertain whose effects went to make the payment or payments, completed in the lifetime of the son; and the requirement in the will, that the father was to pay to the heirs of the son, one-third of the purchase price, forces upon my mind the belief that the son's means (property or money) had gone to make the part payment or payments.

There was no evidence before the Court and jury that the father fulfilled his agreement with his son, alluded to in the will, to pay the last payments for the land; and this, both under the will and the law, he was to do as a precedent act to the land being or becoming his property. Would any Court of equity have decreed the deed to be recorded in the name of the father, to have and to hold, &c., except upon satisfactory proof that he had made the last payments? The said fifth charge sought to put out of the case the important question, Who paid for the land, or whose means were used in paying for it? For this, if no other obstruction had intervened, it should have been refused. The declaration in the will, about payment already made by the father (even to put out of view the community and homestead-rights of the widow and children) amounts at most, I maintain, only to *prima facie* proof that the father had made them. I maintain that where a will, or the recitals or declarations therein, is in opposition to the presumed rights of forced heirs, or widow's community, or the family homestead, it stands no higher as evidence than the entries or declarations of an adverse party. But this more properly comes in anon.

Under the second part of what is considered necessary to make a resulting trust between father and son, viz: the intent at the time of the purchase and conveyance, the Court is respectfully referred to authorities above cited. In the will, I see no declaration of the son tending at all, much less conclusively, to establish an intention of the father and son, or either of them, at the time of the purchase and conveyance, nor at the

Shepherd v. White.

time of any of the payments made in the son's lifetime, that the land should be holden in trust for the father, or that it was a resulting trust in his favor, or that either ever thought or intended, before the son was " sick in body," that the father should own the land. But that this purchase at the time was intended for the use of the son, as well as to be paid for by him, or out of his means and rights, is proved, I conceive, not only by the deed, but is fairly to be inferred from the will. It (the will) tells us that the father had agreed, as we think, just then, with the son, to make the last payments; and " then " the land is to become his property and he to apply to the " Court, &c., and to pay the son's widow, &c., one-third of " the purchase price. If the father was bound to Lindley, " originally, and was from the first to have the land, why " should the son require payment by the father of the unpaid " purchase money, as a prerequisite to the land becoming the " property of the father, and exact of him payment to the son's " widow, &c., of one third of the original price?"

The expression in the will, following the sentence about payments, &c., viz: " And then the land above mentioned shall become the property of W. W. Shepherd, Sen.," is, I maintain, intended as an alienation by devise—on conditions precedent and subsequent, based, I doubt not, on the agreement mentioned in the will. If not so based, it is wholly inoperative as an alienation of the homestead, under Section 22, General Provisions of the State Constitution, and the Act of the Legislature. If so based it might bind the heirs (had the precedent condition been complied with) to refund the purchase money. If so based, and the precedent condition not complied with, the father could not hold the land. It did not become his property. The defendants below have the affirmative of the issue of compliance or no compliance. The burthen of proving payment after the death of the son is on them.

They had the *onus probandi*, and wholly failed to sustain it.

What part of the will plaintiffs in error rely on, as evidence that the purchase and conveyance of this land was a resulting

trust, I cannot guess. Is it the declaration of payment made by the father, or the expression of the wish that the father shall have the land ?

I do not contend that the declaration must be made at the time of the purchase, but the fact, the intent, must then exist. (See American Chancery Digest, Vol. 3, p. 398, Section 186-7-8-9, 212-13-14, 259.)

The District Court did not err in refusing the concluding words in charge No. 2, asked by the defendants below. The entire charge might have been properly excluded, because there was no evidence calling for such a charge. The part excluded is not law. The title is in the son, though in the supposed case the father may have the right.

Should the Supreme Court be of opinion (which I cannot suppose) that the will of the son was and is *prima facie* proof that the purchase was a resulting trust in favor of the father, yet the plaintiffs in error are not entitled to a new trial on the ground of charges refused. To grant a new trial on the ground of error in giving charges asked by plaintiffs below, will be to establish as law the supposition that declarations in a will are competent and sufficient proof to overcome the presumed rights of the widow to community, of the children to inherit three-fourths, and of the family to the homestead, in all cases when a testator is displeased with the limited testamentary powers given him in this State.

LIPSCOMB, J. This suit was brought by Phebe Shepherd, widow of W. W. Shepherd, junior, and A. H. White, guardian of the minor children of W. W. Shepherd, the issue of his marriage with the said Phebe, to recover land in the possession of the plaintiffs in error, who were the defendants in the Court below. The plaintiffs claimed title under a deed, absolute on its face, to W. W. Shepherd, junior, deceased, and exhibited a regular chain of title derived from the original grantee. The defendants claimed as the widow and heirs of W. W. Shepherd, deceased, the father of W. W. Shepherd,

junior, who had long lived upon, and died upon the land claimed by the plaintiffs. It seems that the families of the father and son, lived both on the land, and both died upon it, and the widow of W. W. Shepherd, junior, continued so to live until some time after the death of her husband, when she went to reside with her father. In opposition to the deed for the land to W. W. Shepherd, junior, the defendants set up title in W. W. Shepherd, senior, as a resulting trust to him, he having paid the purchase money; and as evidence rebutting the presumption, which in such cases the law would raise, that the purchase money being paid by the father, would be regarded as an advancement to him and did not raise a resulting trust, relied upon the written acknowledgment of the son, showing that it was not so advanced. The question was, therefore, narrowed down to the issue of trust or no trust. If it was not a trust, there was an end to the defence, as the defendants relied upon no other defence, to defeat the title of the plaintiffs. The supposed declaration of trust, was believed, by the defendants, to be found in an instrument duly executed by the said W. W. Shepherd, junior, and designed by him to be his will, shortly before his death. We will repeat, emphatically, what we ruled, when this case was before us on the correctness of the ruling of the Court below, in excluding that instrument as inadmissible evidence to establish the trust and rebut the presumption, that the payment of the money by the father was an advancement to the son. The principle that the presumption would be as stated, is admitted; and we proceed, " But this presumption may be explained and re-" butted by proof that such payment was not intended as an " advancement. Any written acknowledgment of the son " that it was not so designed, will rebut the presumption, and " let in the resulting trust. The will of the son was an ex-" press declaration of the trust, and was conclusive as pre-" sented, that it was not intended as an advancement." (10 Tex. R. 72.) Upon the record, then before us, we believed that it was evidence of a declaration of trust, which opinion

ought to have been strictly observed by the Court when the case was tried again, after the reversal. We will hereafter inquire whether it was so observed. An instrument, intended as a will, may not be valid, as such, under our testamentary laws, and yet valid for some other purposes. If it contains evidence of a declaration of trust, it would be legal evidence of such fact.

The plaintiffs in error allege, in their assignments, that the Court below erred in giving various instructions to the jury, at the request of the plaintiffs below; and also in refusing to give instructions asked by the defendants in that Court. We do not design discussing all those several charges given and refused, in detail, but will insert here, those believed to be in any way material to the rights of the parties, and then discuss the law upon them.

At the request of the plaintiffs below, the Judge charged the jury, that " a written acknowledgment of the son, in a " will, that the father had paid the money for the son's home-" stead, is not evidence against the son's widow and children, " when the deed records that the son paid for it, and the father " was a subscribing witness to the said deed.

" A written acknowledgment of the son, in a will, that the "father had paid the money for the land deeded by a third " person to the son, is not evidence, against the widow, that " the father paid for the land, if the land was purchased while " the son was a married man.

" The will of W. W. Shepherd, junior, does not seek to " give the land to the father, unless the father did pay the " balance for the land ; and it is incumbent on the defendants " to prove that the father did pay the balance on the said land.

" That, under the Constitution and laws of Texas, in 1846, " and ever since, a married man, in Texas, cannot, by will, " dispose of the homestead of himself and family in Texas, " without the consent of the wife evidenced as the statute " requires.

" In 1846, in Texas, a married man could not dispose of the

" homestead, unless the wife also executed the conveyance, " and acknowledged it, privately and apart from the husband.

" In Texas, a married man could not, in 1846 or before, or " since, dispose of, by will, more than one half of the com- " munity land.

" If these tracts of land were bought by W. W. Shepherd, " junior, after he married Phebe, the said lands are commun- " ity, and one undivided half belongs to Phebe, notwithstand- " ing any will the husband may have made.

" That the husband cannot, without the consent of the wife, " sell or transfer the legal or equitable title of the husband, " and wife in the homestead.

" That the husband can make no transfer, by will, of the " homestead, that he could not make by deed."

The following charges were asked by the defendants : " If " you believe the transcript read, purporting to be a copy of " the will of the younger Shepherd, was the declaration of " the younger Shepherd, it is an express declaration of trust, " and conclusive that it was not intended as an advancement," which was refused.

" If the father pays for the land, and the deed is taken in " the name of the son, this would be presumed to be an ad- " vancement; this presumption is rebutted by any written " declaration of the son to the contrary, (and still leaves the " title to the land in the father, who paid it.") The Court re- fused to give the last part of the sentence (in parenthesis) as to the legal effect of the facts presented.

The first charge given, seems to have been predicated upon the erroneous assumption, that the fact of the father being a subscribing witness to the deed to the son, is a legal bar to raising a resulting trust in favor of the father. This is not true. The fact of the father being present and knowing that the deed was so taken in his son's name, could not affect the trust; and the case is believed frequently to occur, that the deed may be so taken, as a matter of arrangement between the father and son, for reasons that neither of them were

44

Shepherd v. White.

bound to disclose, because it may have been a matter between themselves, alone, and no matter of concern to any one else, except innocent purchasers and creditors without notice. Suppose that the father had borrowed the money from the son to make the payment of the purchase money, and for fear of some misfortune that would cause an inability in the father to refund the money so borrowed, it was thought best that the title should be made to the son for his better security : this supposed case is not unlike, in principle, the case of Boyd v. McLane, 1 Johns. Ch. 583, in which Chancellor Kent held, that the party taking the deed in his own name, took in trust for the use of the real purchaser ; and in that case, though the real purchaser was not a witness to the deed, yet the facts show that it was agreed, between the borrower of the money, and the lender, that it should be so made. Nor is it believed that it has ever been held, that the fact of the payor of the money for the purchase of the land, knew that the deed was made to another person, defeated the resulting trust in favor of such person.

There is another inference, deducible from the charge given, that is equally erroneous, that is, that notwithstanding, from the evidence, a resulting trust would arise, yet it cannot be enforced, if the nominal grantee in the deed, had made it his homestead. This is not the law. If it was a resulting trust, and the nominal grantee held the land for the use of the real purchaser, the trustee could not acquire, upon the land, a homestead, free from and unincumbered by the trust ; he could not claim the protection of the homestead law, any more than he could, if he had been a real purchaser, and taken the deed absolute, but given a mortgage on the land so purchased, to his vendor, to secure the purchase money. And in such a case, we have decided that the protection, thrown, by our statute, around the possession of the homestead, does not attach, (see Farmer v. Simpson, 6 Tex. R. 303,) until all previous liens had been satisfied or discharged. If the Court charged correctly, the result would be that the homestead privilege would

overlay all previous equities, which is not the law. We believe the Court erred in giving this charge.

The principles embraced by the second ground of error, in the order we have transcribed them, have been discussed and disposed of by us, on the first, and need not be again noticed ; only, that in this charge, the effect of the homestead law is more distinctly set out, and therefore it was more clearly erroneous.

The next charge given, in the abstract may be true; but taken in connection with the facts, it ought not to have been given, because it was irrelevant, and calculated to mislead the jury, and make them believe that the defendants claimed the land as a testamentary devise, coupled with a condition, when it was relied on as a declaration of the trust under which the title to the land in him was held; and this declaration, in what was intended as a will, was relied on, to show his trust character, and to rebut the presumption that would arise, from the relations of the parties to each other, that when the purchase money is paid by the father it is intended as an advancement, and not as a testamentary bequest to the father.

The construction and legal effect of this declaration will be discussed in another place.

The two next charges given, in the abstract may be true; but if true, interposed no defence against a resulting trust, as we have before shown ; and were erroneous, because calculated to mislead the jury into the belief, that the homestead privilege would overlay the resulting trust, when it was acquired, if at all, incumbered with the trust, and all other existing liens at the time of its acquisition.

The other four charges may be disposed of in the same way. They present abstract questions, having no relation to the case; and if true, afford no ground to resist a resulting trust. If the deed was held in trust, the community of both husband and wife was subject to all the equities existing at the time the deed was executed. We have before said that if the defendants could successfully resist the claim of the plaintiffs, under the deed,

it must be upon the ground that the deed was coupled with a resulting trust. If this was not shown, the plaintiffs' title by the deed, could not be resisted, and must prevail. Homestead rights and community rights were then, alike, wholly thrown out of the investigation, in disposing of the case; and the charges ought not to have been given.

The charges asked by the defendants and refused by the Court *a quo*, for their correctness, depend upon the construction and legal effect of the supposed declaration of trust, made in writing by the holder of, and nominee of, the deed upon which the plaintiffs relied to sustain their action.

It is as follows: "The place I now reside on is in my own "name; and it being paid for by my father, all but the last "payments above mentioned for said land, and then the said "land above mentioned shall become the property of W. W. "Shepherd, sen.; and he shall apply to the Probate Court, "and have the deed of said recorded in his own name, to "him and his heirs, to have and to hold, in every sense of the "word and law, as if I had sold it to him and made a *bona* "*fide* deed; and then said W. W. Shepherd shall pay to my "heirs, Phebe C. Shepherd, or guardian, for the use of her "and the educating of my bodily heirs, as before directed and "described, one-third of the amount of money paid originally "for the above described land." It is badly constructed; but it is the duty of the Court to construe it, if possible, according to its sense and meaning, and to declare its legal effect. This declaration, made by the nominal holder of the title, is so very awkward in the structure of sentences, and the phraseology, that it renders the sense and meaning somewhat obscure; but we believe that in one part, however, the meaning is sufficiently clear and explicit, that two thirds of the purchase money was paid by his father, according to the terms of the original purchase, and that such payment entitled his father to the land. In this, we believe that we find conclusive evidence of a trust, and that the presumption of its being an advancement for the son's benefit, is rebutted. We do not be-

lieve that the construction, contended for by the appellees' counsel, that it was a sale from the son to the father, can be fairly deduced from the language employed. This declaration of the trust character of the deed, is, at any rate, clear in support of the father's equitable title to two-thirds of the land; but it is not so clear as to what should be done with the other one-third. The doctrine is believed to be well settled, that where a part of the purchase money has been paid, the trust shall be sustained *pro tanto.* See Botsford v. Burr, 2 Johns. Chan. 406, where the authorities are collected and examined by Ch. Kent. We believe that the declaration is to be taken altogether; and then, whilst on the one hand it affords conclusive proof that two-thirds of the purchase money had been paid by the father, it, on the other, shows that the other third has not been paid by him. By what rule, then, shall the trust be enforced? Shall we decree two-thirds of the land to the heirs and legal representatives of the father, and leave the one-third to be held by the legal representatives, or heirs, of the son, under the deed, and direct that a partition should be made? This might be conveniently done, if the land in controversy was in a large tract; but it is small, and it might impair the rights of both parties, to direct a division. We are aware of no principle of chancery jurisdiction, that would restrain us from decreeing that the land should be charged with the satisfaction of this unpaid third of the purchase money. And it is believed that, in so decreeing, we would be sustained by analogy to decrees often rendered in proceedings had to establish and allow the equity of redemption in a case where the deed of conveyance for the land seemed, on its face, to be absolute and unincumbered, but, in reality, was intended, and so taken, as a security for the payment of money. In such cases, it is a constant practice, to decree a title to be made, upon the payment of money intended to be secured by the deed, or so much of it as remained unpaid, or to decree the title to be vested in the party to whom the land in equity belonged, on the payment of the money to be secured. The one

or the other of these modes would depend upon the practice of the Court; though it is more convenient to vest the title, by the decree, in the party to whom it really belongs, without requiring a conveyance to be made. We are not aware from the record, of the true character of the transaction when this deed was executed; but it is fair to presume that, though absolute on its face, it was really so taken as a security for the payment of money, or for something analogous to it. (See cases, 1 and 2, Johns Chan., cited above, for the analogy.)

If the fact that the instrument of writing, by whatever name designated, containing the declaration of the trust, was executed by W. W. Shepherd, jun., was admitted, there was nothing for the jury to pass upon, but to ascertain the amount of the one-third part of the original purchase money. If the fact of the execution of the writing by Shepherd, the younger, was not admitted, then they should have passed, also, upon that issue. The fact of the execution of the instrument, being established by the admission of the parties, or found by the jury, and the amount of the one-third of the purchase money unpaid, also found, the Court ought then to have entered the decree vesting the title in the heirs and legal representatives of Shepherd, sen., charged with the payment of the one-third part of the purchase money so found by the jury. The jury had nothing to do with giving a construction to the declaration; it being in writing signed by the party, nor with its legal effect. So far as that instrument was regarded, they had only to say whether it had been executed by the party charged to have made the declaration. It was, exclusively, the province of the Judge to construe it, and to declare its legal effect.

When this case was formerly before us, our opinion was explicitly expressed, in disposing of it, that the declaration was conclusive in proof of the payment of the money, in rebutting the presumption that it was a voluntary advancement by the father to the son, and in establishing the trust; but we did not decide what should be done in relation to the unpaid third of the purchase money; and this omission may have

caused the Judge, in trying this case again in the Court below, to have overlooked what we had expressly decided. His reputation forbids our indulging, for a moment, the belief that he would knowingly disregard the decisions of this Court, constitutionally organized to review and correct the decisions and judgments of the District Court. And whether the decisions here made are correct on sound principles of jurisprudence, or not, no other Court under the State jurisdiction can gainsay or refuse submission to them. After being so decided, they became the law of the land, governing all cases coming within their scope, until such decisions are here overruled by this Court. Judgment reversed, and cause remanded for a new trial, according to the opinion here expressed.

Reversed and remanded.