W. H. McCREERY v. J. F. FORTSON AND OTHERS.

1. The principle of law that a judgment of a court of competent jurisdiction cannot be collaterally impeached is too well settled to be now called in question.

2. R. bargained for a tract of land in 1851, giving his notes for the purchase money, and receiving his vendor's bond for the title. In 1856, R. being then dead, and the land not paid for, the probate court set aside 200 acres of the tract as the homestead of his family. *Held*, that this order of the probate court was without authority of law, for the reason that the purchase money remained unpaid, and the title had never vested in R.

3. Under a decree of a district court, an entire tract of land was sold for the payment of an unpaid balance of purchase money; but previous to the rendition of the decree, the vendee had died, and the probate court had set aside to his family a portion of the tract as their homestead. *Held*, that this homestead claim could avail nothing against the title of the purchaser under the decree of the district court; which decree cannot be collaterally impeached on the ground that the sale of a part only of the tract would have sufficed to satisfy the unpaid purchase money, leaving unsold the portion claimed as the homestead.

APPEAL from Navarro. Tried below before the Hon. F. P. Wood.

The opinion of the court states the material facts.

41—XXXV

The brief for the appellant bears no signature of the counsel who filed it.

*C. M. Winkler*, for the appellees.—I contend that the judgment of the District Court of Navarro county, in the case of Cadwell v. Fortson's Administrator, in so far as it ordered the sale of the property of a deceased person, whose estate was undergoing administration, was, at the date of the rendition of the judgment, October, 1857, without authority of law, and void.

2. That the county court had no lawful power to order a sale of improved lands for the payment of debts, whether secured by lien or otherwise, until all other property of the estate, subject to sale, had first been exhausted; and that the homestead, notwithstanding the lien, could only have been subjected to sale as a last resort.

3. That the debt secured by the lien, if the court shall hold the land subject to sale in the first instance, ought to have been made of that portion not embraced in the homestead.

4. That before the establishment of the lien, by virtue of the order of the county court setting aside two hundred acres to the widow and children of the deceased, the family had acquired an equitable claim in the two hundred acres, which was under the protection of the law.

What are the facts? The district court ordered the land to be sold for cash, in due course of law, for the payment of Cadwell's debt, $1307.40. This was in October, 1857. The county court, at the November term, 1857, ordered the land to be sold to the amount of $1400, ·for cash, and the balance on a credit of twelve months; and the administrator sold for cash to the amount of $1450, and on credit, $2848.80, amounting in all to

$4298.80. (See administrator's report, pp. 47, 48 and 49, of the Record.) Two tracts of land were sold together, when they should have been separated.

The county court did not follow the judgment of the district court, nor did the administrator follow the order of either the district or the county court in making the sale. Under these proceedings great wrong has been done. Over $4000 worth of property, being all the land, was sold to pay a debt of $1307.40, including a farm of three hundred acres, the rent of which is proved to be worth annually three dollars per acre, amounting to nine hundred dollars a year, and for which there certainly was no necessity. Therefore, I insist there was no authority of law, as the record shows a large amount of property, and that as late as the year 1860, a considerable amount was turned over to the guardian of the heirs of Fortson, these appellees being among the number.

The appellant takes the position that there can be no homestead until it is paid for, which position is, I think, not fully sustained by the authority cited; the true position seems to be, that the character of homestead attaches, although not paid for, subject, however, to the vendor's lien. (See the case of McHendry v. Reilly and Wife, 13 Cal. R., 75, 76.) To his second position I reply, that it was not competent for the district court to order a sale of the lands; all it had jurisdiction to do in the matter was to ascertain the sum due, and fix the lien. In so far as the ordering a sale of property of an estate is concerned, the law, it is submitted, confers this authority on the county court alone. (Fortson v. Cadwell, 17 Texas R., 627 ; Digest, 1318.) And with reference to the power and duty of the county court, I insist that where a mild remedy is given, the courts should never apply the harsher at the

outset; and in applying this principle, I contend that as a remedy, full and complete for Cadwell, by which he could have enforced payment, is given by Article 1314 and Article 1315, this remedy should have been first resorted to.

If the court should not bear me out in these positions, and should hold that under Article 1519 of the Digest the judgment creditor can go against the property to which the lien attaches in the first instance, I say that even under this article the court could not go beyond the amount required to pay the demand. This, to my mind, is the obvious meaning and intention of the article in question—the first portion is limited by the latter portion; and that the courts, both district and county, transcended the powers given by law in ordering the land to be sold *in solido*.

That whenever the law has not given authority for an act, such act is not voidable only, but absolutely void, seems to be well settled in the interesting case of Withers v. Patterson, cited by appellant.

The court will bear in mind that this was not a general order for the payment of debts, but a special order for a specified purpose, and depending not upon any general law, but which depends for its authority upon the proper construction of one particular article.

Now, I would not violate any law in order to protect the homestead; nor do I think that the construction contended for tends in even a remote degree to protect it against any creditor of the estate of Fortson; because, as I have already shown, all creditors were amply provided for by the statute, and with a sufficiency of assets; yet, in view of the unquestioned benefits derived from the protection of the homestead—uniformily recognized—I say that the laws should never be so interpreted, nor should they ever be so administered, by the

courts, as to deprive any family of their benefits un-
necessarily ; and in the case at bar, I insist that there
was at least an equitable claim upon the homestead,
which invoked the protection of the law, inasmuch as
there was no necessity for its sale, and because it had
been set apart to the family of Fortson by the proper
authority before the judgment of the district court es-
tablishing the lien was rendered.

It is intimated that the county court at the time the
order of sale was made might have regarded that the
homestead had been abandoned ; to which I reply, that
there is no word of evidence going to show any abandon-
ment of this home ; that as far as the evidence goes, the
mother of the children married and went away, and we
have no further account of her ; and not until 1860 does
there appear to be any appointment of a guardian for
the children.   The father died in 1855 ; this was the
home of the family then, and the children were all
minors, so says the record ; the widow goes away with
her husband, but not so the children ; their father was
dead, they had been abandoned by their mother, and
for years had no guardian, yet they are asked to yield
up their homestead because the money, the major part
of what it sold for, went into the general fund, for the
payment of debts for which it could never have been
touched ; and because these appellees have not offered
to pay it back to the appellant.

But it is insisted that all these matters are mere irreg-
ularities which cannot be impeached collaterally ; that
the purchaser at administrator's sale had no notice, and
is not affected, etc.   The case of Withers v. Patterson is
well calculated to disabuse us of any loose ideas on the
subject of jurisdiction and what it means.   It means,
when applied to the courts, that what they may law-
fully do, they have jurisdiction to do ; that however

large and general their jurisdiction may be, it is all de-
rived from the Constitution and the laws; these must
confer the authority, or none exists.    This case of
Withers v. Patterson decides that the purchaser at an
administration sale is bound by what appears on the
record of the court ordering the sale, whether he ever
saw them or not, and that such purchaser, under an or-
der the court has no legal authority to enter, takes no
title, as well as that such illegal orders may be in-
quired into collaterally, and to my mind is decisive of
the present case against the claim of appellant.    As to
the hardship to appellant, claimed, I say that he has
involved himself in any loss he may sustain voluntarily
and with his eyes open; certainly the appellees are
free from censure.

In Kentucky, this judgment with a lien attached
would not have been attempted to be enforced without
first giving an opportunity for payment; and in default
of this, a sufficiency of the land to pay the debt would
have been subjected to sale, and no more; there prop-
erty of over $4000 in value, would not have been sold
to pay $1307.40.    (See Mills v. Metcalf, 3 Little, 421;
McGee v. Beall, Id., 192; Jones v. Froman, 6 Mon-
roe, 129; January v. January, 7 Monroe, 543; Chris-
topher v. Blackford, 1 B Monroe, 452.)

It may be said, that if the appellees have been injured,
their remedy would be against the administrator and
his sureties.

This court, in Gregory v. Patton, 21 Texas, 517, says
that this remedy would often be wholly inadequate; and
if the reasons there given were sufficient to authorize
the heirs to interpose, they certainly apply with much
greater force now.

The view that I have taken of this case is, that there
was no authority of law for making this sale as it was

made; that these matters were all of record, and the purchaser was affected with notice of the illegality of the whole proceeding by the record; that the order of sale and the sale was null and void, and the purchaser acquired no title under it; and that if the court should not by its judgment annul the whole proceeding, and remand the party back to a legal enforcement of his lien, which seems to me to be the proper course, at any rate the court will not reverse so far as the homestead is concerned.

OGDEN, J.—The general rule of law that the judgments of a court of competent jurisdiction cannot be collaterally impeached has been too long and thoroughly settled upon principle and authority to be now called in question. And this rule, when properly applied, will most definitely decide and determine all the many apparently complicated questions presented in the record of this cause.

In 1851, Daniel Cadwell sold to B. J. Fortson the land involved in this suit, and in 1857 he obtained a judgment in the district court for the balance of the purchase money due him, and a decree foreclosing the vendor's lien, with an order to the probate court to have the land sold to satisfy the judgment. The order was made by the probate court for that purpose; the land was sold in obedience to the order, the purchase money was paid, and the probate court affirmed the sale. Appellant's vendor became the purchaser, and took possession of the land and held it until 1869.

It appears that in 1856 the probate court, by an order entered upon its records, set aside two hundred acres of the same land as the homestead of the family of B. J. Fortson, deceased; and in 1869, the appellees, children of B. J. Fortson, deceased, got possession of the land,

and claim it, under the order of the probate court of 1856, as their homestead.   In 1870 the appellant brought suit in the district court for possession of the land, and in 1871 a judgment was rendered for the appellees for the two hundred acres as a homestead, and for appellant for the balance of the land ; from which judgment this appeal was taken.

The first question presented by the record is, by what right do appellees claim the exemption of a homestead out of land belonging to or claimed by their deceased father at the time of his death ?   The constitutional exemption is to the head of a family, and not to the children, at least so long as the parents, or either of them, are living.   It would appear from the record that the mother of appellees is still living, and appellees have not lived with their mother for many years; and it may be much doubted, while she lives, whether any one but the widow of the deceased, and the mother of the children, could set up any claim to the homestead exemption. In the case of Woods and Wife v. Wheeler, 7 Texas, 13, it was held that at the death of the husband, the surviving wife became the head of the family, and that she alone is entitled to claim the homestead and other exempted property ; and a similar doctrine is held in Brewer v. Wall, 23 Texas, 580, and in Tadlock v. Eccles, 20 Texas, 782.   But we do not consider this question material to the determination of this cause.

The land in dispute was bargained for by appellees' ancestor in 1851, but was not paid for when, in 1856, the probate court set apart two hundred acres as a homestead ; but no title was ever executed to the ancestor of appellees, and he never owned the same.   It is from the property of a decedent that the Constitution and laws make an exemption of a homestead, and not from the property of a stranger.   But this question has been

definitely, and we think justly, settled by the decisions of this court, and we have no occasion, or wish, to hunt up decisions of other courts, made under laws foreign to our own, for authority to overrule those well settled principles. In Farmer v. Simpson, 6 Texas, 310, the court said, "A homestead is not acquired, within the meaning of the law, until title to the land on which such homestead is established has been acquired." (See also Shepherd v. White, 11 Texas, 354; Tadlock v. Eccles, 20 Texas, 790; Monroe v. Buchanan, 27 Texas, 241, and many other causes in which the same doctrine is held.) From these decisions we have come to the conclusion that the probate court of 1856 had no authority to set apart two hundred acres of the land in question as the homestead of the family of B. J. Fortson, for the reason that he had not paid the purchase money, and the title had never vested in him; and that the order, being without authority of law, was null and void.

There is no denial that Cadwell held a vendor's lien on the land, and certainly it cannot be doubted that the district court had jurisdiction to foreclose that lien, and there is no attempt to impeach that judgment for irregularity or fraud. That judgment, therefore, must be considered as a finality, and a settlement of the rights of the parties. That judgment was certified to the county court; and though there may have been a technical objection to the wording of the decree of the district court, yet the probate court, by a regular order, executed that decree in compliance with the letter of the law. The land was sold, the purchase money paid, and the sale confirmed, and title executed, and the purchaser received a good and indefeasible title as against the estate. And though a portion of the land might have sold for a sufficient sum to pay off the judgment lien, yet it was a question for the discretion of the court

whether a portion or the whole of the land should be sold; and as that discretion was exercised by ordering a sale of the whole land, as the law fully authorized, we do not think that order is now a matter to be revised by this court.

From the view of the law of this case as herein expressed, it is manifest that the district court of Navarro county, in 1871, had no jurisdiction over the judgment or decree of a former court to revise or correct the same, and more especially as that was a judgment of a court of competent jurisdiction, unappealed from, and unimpeached for mistake or fraud; and as that judgment had been fully executed, and became a finality, it was the duty of the court to have regarded it as an end of the controversy, and to have adjudged to the appellant his rights under that former judgment, and the sale made in conformity thereto, as measured by the law. The judgment of the district court is therefore reversed, so far as it gives to appellees two hundred acres of the land in controversy as a homestead, and reformed so as to give to appellant the land described in his petition below, and for all costs incurred in this behalf, and also that he have a writ of possession.