T. A. GORDON *et als.* *v.* J. F. ENGLISH and N. HAYS.

1. GUARDIAN AND WARD. *Land purchased with Ward's money. Election to take land or money. Claim superior to Homestead right.* An infant, whose money has been used by the guardian in paying for land bought in his own name, may follow the money into the land, and elect to take the land, or have the money declared a charge upon the land, and the land sold for its satisfaction; and the infant's claim will be superior to the guardian's right of homestead in the land.

2. SAME. *Same. Priority of bona fide mortgagee. Pre-existing debt.* As between an infant, whose money has been used by the guardian in paying for land, and a *bona fide* mortgagee of the land, without notice of the infant's equity, for a consideration passing at the time, the mortgagee will have the better right, and will be entitled to the security even for a pre-existing debt included therein, if the new advance was made for the purpose of obtaining the additional security for the antecedent debt, and the new consideration forms a substantial part of the debt secured.

FROM GILES.

Appeal from the Chancery Court at Pulaski. W. S. FLEMING, Ch.

W. H. McCALLUM for complainants.

T. M. JONES and N. SMITHSON for defendants.

COOPER, J., delivered the opinion of the court.

On the 21st of August, 1872, Jacob F. English bought, at a chancery sale of the lands of his father's estate, a tract of land containing one hundred and

sixty-five acres, at the price of $10,316.40, for which he gave his notes on time, and the sale was confirmed.

On the 18th of August, 1873, he was appointed guardian of his sister, Martha A., then and at the commencement of this suit a minor, who afterwards intermarried with T. A. Gordon. On the special bond given to cover the share of Martha A. in the proceeds of the sale of her father's land, the guardian gave as his sureties Samuel Yorkley, Jacob Yorkley, and M. E. Alexander. This share amounted to $2,-276.99, which the guardian received and had the sum placed as a credit upon his notes for the land bought as above. He borrowed from N. Hays, at one time, $400, which he paid on the land, and afterwards $1,300, with which he made the last payment. When this last loan was made, on the 6th of January, 1876, he and his wife joined in a conveyance of the remaining one hundred and twenty-five acres of the land bought, he having previously sold off forty acres, in mortgage to Hays, to secure a note at two years with interest, for $2,033.44, given for the money thus borrowed and used, and for about $300 based on other considerations. On the 15th of August, 1877, this bill was filed by Gordon and wife and the sureties of English on his guardian bond, against English and Hays, seeking, upon the ground of the insolvency of English, to follow the funds of Gordon's wife into the land. Pending the litigation, the land was sold by consent and brought $4,033.35.

On the final hearing, the Chancellor was of opinion that complainants, by the frame of their bill, had

elected to take the land, and were entitled to share therein, and consequently in the proceeds of sale, in the proportion her money so invested bore to the residue of the purchase money, and it being agreed that this was one-fifth, he gave Gordon and wife a decree accordingly.

The Chancellor ordered Hays' debt to be paid in full, and the remainder of the proceeds of sale to be invested in a homestead for English and his family, he being the head of a family, and an actual occupant of the land before suit was brought. The complainants appealed.

The Chancellor's decree on the rights of complainants rests upon the conclusion that Gordon and wife, by the frame of their bill, had elected to take the land. In that view, the decree fixing the proportion of their interest was probably correct. *Gannaway* v. *Tarpley*, 1 Col., 572, 580. But he was clearly in error in his conclusion. The bill says that the complainants "are advised that they have the right to follow the funds of the said Martha A. Gordon into the land, which was paid for with those funds, and to subject it to sale for the payment of the amount due from him as guardian, at least to the extent that her estate was used in paying for it." They charge that the note given to Hays, and secured by mortgage of the land, was for a pre-existing debt in whole or in part, and say they are advised that they have the right to priority of satisfaction out of the land, or in any event that they are entitled to be paid ratably out of the proceeds of the land. The

sureties claim that, as their principal is insolvent, they may subject the property purchased with the assets of the ward to the payment of the liability incurred. The prayer of the bill is, that the court "decree a sale of said land for the satisfaction of the amount due complainants, Gordon and wife, and declare their right to priority of satisfaction over Hays; or if this cannot be done, that a decree be made allowing them to share ratably with him in the proceeds of sale." There is not only no election to take the land, but a distinct election to have satisfaction of "the amount due" them from the guardian out of the proceeds of the sale of the land, or, at any rate, such ratable part of the debt as they may be entitled to as between Gordon and wife and Hays. The bill states that the amount due from the guardian had been ascertained by a settlement of the guardianship, and asks that this amount, to the extent of the ward's funds invested in the land, be made a charge upon the land, and the land sold in satisfaction thereof. The decree in its main feature is, therefore, erroneous.

It is elaborately argued by the learned counsel of the defendants, and perhaps the Chancellor may have been misled by this view of the law, that the right of election of the ward was to take the land or the money; if the land, then the interest would be as tenant in common with the guardian in the proportion of the fund invested; if the money, then the demand would be personal against the guardian, and the land would belong to the guardian free from all claim of the ward. But this is a misconception of the rights

of the parties. No doubt, where the funds of a beneficiary have been used by the trustee in the purchase of land, if the beneficiary actually accept the money, with full knowledge of the facts, the land becomes the property of the trustee free from the trust. *Caplinger* v. *Stokes*, Meigs, 179. So, if the beneficiary take the land, the trust debt is extinguished. *Phillipps* v. *Terrell*, 10 Heis., 417. But if the beneficiary do not choose to take the land, and the money has not been paid, he may follow the money into the land by having it declared a charge thereon, and sold for its satisfaction.

The old cases actually limited the relief to this form, where the property was only partially paid for by the trust fund. Where a husband had invested the funds of his wife, together with his own funds, in land, and the contest was between the wife and the heir of the husband, Lord Eldon said: "One great question is, whether this estate belongs to the heir or the wife. The claim of the wife is put in this way: that personal property bound by the trust or obligation, whatever it is called, of this bond, is traced into the purchase of real estate, which estate must, therefore, be hers. But I do not know any case, in its circumstances sufficiently like this, to authorize me to hold that doctrine. I am prepared to say, that the personal estate bound by this obligation, and which has been laid out in this real estate, is personal property, that may be demanded out of the real estate, and that the estate is chargeable with it. But it was not so purchased with it, that the estate

should be declared to belong, not to the heirs, but to the wife." *Lewis* v. *Madocks*, 17 Ves., 48, 57. To the same effect are *Lane* v. *Dighton*, Amb., 409; *Lench* v. *Lench*, 10 Ves., 511; *Savage* v. *Carroll*, 1 Ball & B., 265, 285. Some of the American cases are in accord. *Wallace* v. *McCullough*, 1 Rich. Ch., 426; *Wallace* v. *Duffield*, 2 Ser. & R., 521. And no doubt the principle would yet be applied in proper cases. But the beneficiary may, as a general rule, elect to take the land or the money, and use his hold on the land as a means of getting his money; or, in other words, the beneficiary has a lien on the land, with a right to a decree for a sale to reimburse the trust fund, and may hold the trustee responsible if there is a loss on the sale. Perry on Trusts, sec. 128; W. & T. Lead. Cases Eq., 341, 342, (4th Amer. ed.)

In this class of cases, our decisions are, that the ward, whose money has been used, may, irrespective of the point of time at which the title passed to the guardian, claim the land against all persons except *bona fide* purchasers for value. *Gannaway* v. *Tarpley*, 1 Col., 580; *McCall* v. *Flippin*, 2 Baxt., 161, note; *Snell* v. *Elam*, 2 Heis., 82; *Turner* v. *Petigrew*, 6 Hum., 438. If the title does not actually pass to the beneficiary by way of resulting trust, he is the equitable owner of the property, and the Chancery Court will decree it to him, or subject it to the satisfaction of his demand as he may elect.

The nominal purchaser has a mere naked legal title subject to the trust. He is precisely in the attitude of a purchaser of land, in those States which consider

a mortgage as a mere security, who has taken the title, and at the same time re-conveyed in mortgage to secure the purchase money. He cannot acquire a homestead right as against the person whose money has been used. The money due the beneficiary is in reality purchase money, against which the homestead exemption cannot prevail, whether there be a statute to that effect or not. Thomp. Homest., section 330. The law has been so declared in the case of a resulting trust proper. · *Shepherd* v. *White,* 11 Texas, 354. And it must be the same with a trust which has all the qualities and effects of a resulting trust proper. The Chancellor erred in holding otherwise.

Gordon and wife concede the priority of Hays to the extent of the advance when the mortgage was made, but claim the prior right as to the residue of Hays' debt, which was pre-existent at the date of the mortgage. The right of the beneficiary is superior to that of creditors merely claiming under an assignment made to secure existing debts. *Turner* v. *Petigrew,* 6 Hum., 438. If, however, an assignment is made to secure money advanced at the time without notice of the equity, it is conceded that the creditor would have the better right, for he is *pro-tanto* a purchaser. *White* v. *Hussey,* Prec. Ch., 13; *Lister* v. *Turner,* 5 Hare, 281; *Bass* v. *Wheless,* 2 Tenn. Ch., 531. The record shows that Hays made the last advance in consideration of the mortgage being made to cover the previous indebtedness. The rule in such cases is, that the payment of a substantial consideration at the time will render the mortgagee a purchaser for value, and the

presumption, in the absence of proof, is that the mortgagee made the new advance for the purpose of obtaining the additional security for the antecedent debt. *Baggarly* v. *Gaither*, 2 Jones' Eq., 80; *Gliddon* v. *Hunt*, 24 Pick., 221; *Percival* v. *Frampton*, 2 Crompt., M. & R., 180; *Finnegan* v. *Finnegan*, 3 Tenn. Ch., 510.

The reason is, that the mortgagee is a *bona fide* purchaser by the new consideration, and his rights as such should not be affected by the fact that he was induced to make the advance in order to secure the pre-existing debt. It is enough that the new consideration constitutes a substantial part of the debt secured. The exception of English to so much of the deposition of Hays as relates to this subject is clearly not well taken, and was properly overruled. Besides, as against English, the claim of Hays is good, and so conceded to be *in toto.*

There is proof in the record tending to show that this suit is really the suit of the sureties, using the names of Gordon and wife by permission. There is also proof that on the next day after the execution of the mortgage to Hays, English and his wife joined in a conveyance of the same land in trust to indemnify the sureties on the guardian bond from loss thereby, but recognizing the prior right of Hays under his mortgage. No motion was made based on the first disclosure, nor is the fact noticed in any pleading or decree. The defendant Hays does mention the execution of the trust assignment in his answer, and insist that the sureties were estopped, by their acceptance of it, to dispute his priority, and the Chancellor so held.

41—VOL. 3.

But our conclusion that Hays is entitled to priority of satisfaction for his entire debt over Gordon and wife, through whom alone the sureties can obtain any benefit under this bill, renders it unnecessary to consider the question of estoppel. The pleadings raise no question as to the renunciation by the sureties of their rights under the trust conveyance by the filing of their bill. That point can only come up when they seek to enforce the trust. This part of the Chancellor's decree will be reversed.

The result is, that the entire mortgage debt of Hays must first be paid out of the proceeds of the sale of the land, then the balance due to Gordon and wife. Any surplus will go to English. The decree below not being altered so far as Hayes in concerned, and English being insolvent, the complainants will pay the costs of this court. The costs of the Chancery Court will go as decreed below.