WITT v. WITT. (No. 7883.)

(Court of Civil Appeals of Texas. Galveston. April 7, 1920. Rehearing Denied April 29, 1920.)

I. Trusts ⬤⟲44(2)—Recitals in deed from son to mother supported finding he held in trust for her.

Recitals in deed from son to mother *held* sufficient to support finding, in trespass to try title by mother against son's widow that son held property in trust for mother and that she paid greater part, if not all, of purchase money for lots and house thereon, with agreement title should stand in son's name but be her property.

2. Evidence ⬤⟲383(7)—Recital of payment of consideration by grantee rebutted by declaration in deed to mother.

Legal presumption that as son paid consideration recited in deed whereby lots were conveyed to him he became owner of property *held* sufficiently rebutted by his express declaration in his deed to his mother that she paid it and that he held title in trust for her.

3. Homesteads ⬤⟲88—Property held in trust cannot be impressed with rights for wife.

Property held in trust by a son for his mother cannot be impressed with homestead rights for the son's wife.

Error from District Court, Harris County; J. D. Harvey, Judge.

Suit by Mrs. Rebecca A. Witt against Charles A. Witt and Lottie Witt. To review judgment for plaintiff, the last-named defendant brings error. Affirmed.

Fred R. Switzer, of Houston, for plaintiff in error.

Fullbright & Crooker, of Houston, for defendant in error.

LANE, J. This suit was brought by Mrs. Rebecca Witt against Charles A. Witt and wife, Lottie Witt, by petition filed March 28, 1918. The suit is one in trespass to try title to lot 5 and fractional part of lot 4, block 313, of Houston Heights, Harris county, Tex., and for certain personal property. Three days after the petition was filed Charles A. Witt committed suicide and the cause was dismissed as to him and proceeded to trial between Mrs. Rebecca Witt, as plaintiff, and Lottie Witt as defendant.

The defense interposed by Lottie Witt was that Charles A. Witt purchased from W. O. Neuhaus and others the lots involved in this suit in the years 1905 and 1906; that after said purchase he erected thereon a

residence which he occupied as a home for himself and mother; that some time after the purchase of said lots and the erection of the house thereon Charles A. Witt married her (Lottie Witt), and as husband and wife they lived upon said lots for several years and made the same their home; that after such marriage and after said premises had been dedicated as a home the said Charles Witt undertook to convey to Rebecca Witt said premises by a deed executed and delivered by him to her; that said deed was void and did not have the effect to convey said premises to Rebecca Witt for the following reasons: First, because it was not signed and acknowledged by her, and therefore was insufficient to divest her of her homestead rights; and, second, because said deed was made for the purpose of defrauding her out of her rights in said homestead.

Defendant in error, Rebecca Witt, introduced in evidence the following agreement and instrument: (1) Agreement by the parties that Charles A. Kessler and W. O. Neuhaus were the common source of title, and that certain parties named in the agreement were the only heirs of Charles A. Kessler, deceased. (2) General warranty deed, dated April 3, 1905, from Wilhelmine Kessler, for herself and as executrix of the estate of Charles A. Kessler, and W. O. Neuhaus, to Charles A. Witt, reciting a consideration of $600 cash paid to grantors, conveying lot 5, block 313, Houston Heights, which deed was recorded in Harris county deed records, April 10, 1905. (3) Quitclaim deed from all the heirs of Charles A. Kessler to Charles A. Witt, reciting $1 cash consideration conveying the same property as next above set out, which deed was dated November 15, 1905, and recorded in deed records of Harris county, Tex., January 8, 1906. (4) General warranty deed dated November 15, 1906, from all the heirs of Charles A. Kessler and W. O. Neuhaus to Charles A. Witt conveying lot 4, block 313, Houston Heights, less 30 by 30 feet square out of the northwest corner, reciting a consideration of $550, of which $150 was paid in cash, balance to be paid in accordance with two vendor's lien notes for $200 each, due one and two years after date, recorded in Harris county deed records January 8, 1906. (5) Release of above-mentioned two notes, dated November 27, 1907, filed for record same date. (6) A deed dated July 12, 1916, from Charles A. Witt to Rebecca A. Witt, which is as follows:

"The State of Texas, County of Harris.

"Know all men by these presents: That whereas, I, Charles A. Witt, of the county of Harris and state of Texas, did on the 3d day of April, 1905, purchase from Wilhelmine Kessler, E. B. Kessler, and W. O. Neuhaus that tract or parcel of land situated near the city of Houston, in the county of Harris and state of Texas, known as lot 5, in block 313, Houston Heights, for the sum of $600, and did on the 15th day of November, 1905, purchase from Wilhelmine Kessler, E. B. Kessler, W. O. Neuhaus, and all the heirs of Charles A. Kessler, deceased, all that certain tract or parcel of land situated near the city of Houston, in the county of Harris and state of Texas, and known as lot 4, in block 313, Houston Heights, less a piece 30 feet by 30 feet square out of the northwest corner of said lot, said 30 feet square having an artesian or deep well thereon; and whereas, I, the said Charles A. Witt, did thereafter build and construct upon lot 5, in block 313, a house which cost a sum total of $2,600; and whereas, Mrs. Rebecca A. Witt, of the county of Harris and state of Texas, did at the time of the purchase of said property and the construction of said house furnish for the purchase money of said lots and the construction of said house the full sum of $2,720, in cash; and whereas, it was agreed by and between the said Charles A. Witt and Mrs. Rebecca Witt, at the time of the purchase of said lots and the construction of said house, that said lots and said house were the property of said Mrs. Rebecca Witt in consideration of the money so furnished, subject to an agreement by and between the said Charles A. Witt and Mrs. Rebecca A. Witt that the said Mrs. Rebecca A. Witt would sell the said house and lots to the said Charles A. Witt when he should be ready, able, and willing to buy same and pay therefor the said sum of $2,720, together with the legal interest thereon; and whereas, the said Charles A. Witt has never been able to consummate the purchase of said property, house, and lots, and is now unable at this time to do so, and is now at this time unable to pay for same; and whereas, the legal title to said property is now vested in said Charles A. Witt:

"Now, therefore, in consideration of the premises, and in consideration of the fact that the equitable title to said property, house, and lots has at all times been in said Mrs. Rebecca A. Witt, and in consideration of the sum of $10 to me cash in hand paid by the said Mrs. Rebecca A. Witt, the receipt whereof is hereby acknowledged, I, Charles A. Witt, of the county of Harris and state of Texas, have granted, sold, and conveyed, and by these presents do grant, sell, and convey, unto Mrs. Rebecca A. Witt, of the county of Harris and state of Texas, all those certain tracts or parcels of land lying and being situated in the county of Harris and state of Texas, known and described as follows: All that certain tract or parcel of land situated near the city of Houston and known as lot 5, in block 313, Houston Heights, being the same land conveyed to me by Wilhelmine Kessler and others by deed dated April 3, 1905, and recorded in the deed records of Harris county in volume 176, page 132, and all that certain tract or parcel of land situated near the city of Houston, in the county of Harris and state of Texas, and known as lot 4, in block 313, Houston Heights, less a piece 30 feet by 30 feet square out of the northwest corner of said lot, said 30 feet square having an artesian or deep well thereon—to have and to hold the above-described premises, together with all and singular the rights and appurtenances thereto in anywise belonging, unto the said Mrs. Rebecca A. Witt, her heirs and assigns forever; and I hereby bind myself, my heirs, executors, and administrators, to warrant.

and forever defend, all and singular, the said premises, together with all and singular rights and appurtenances thereto in anywise belonging unto the said Mrs. Rebecca A. Witt, her heirs and assigns, against every person whomsoever lawfully claiming or to claim the same or any part thereof by, through, or under me.

"Witness my hand at Houston, Tex., this 12th day of July, A. D. 1916.　　Charles A. Witt."

This deed was duly and timely acknowledged and recorded.

The undisputed evidence shows that the house was built on the lots prior to the marriage of Charles A. and Lottie Witt, and that Charles and his mother, Mrs. Rebecca Witt, resided thereon as their home; that Charles Witt married appellant, Lottie Witt, on the 14th day of January, 1915, and from that time as husband and wife they resided upon said premises until the death of Charles on the 1st day of April, 1918, and Lottie Witt continued to live thereon after the death of Charles.

Lottie Witt testified that Charles Witt told her the property was his; that he told her it was his home and that he had spent every dollar he had ever earned on the place; that after she and Charles were married Mrs. Rebecca Witt went to live with her daughter and took her furniture with her.

W. O. Neuhaus testified as follows:

"I have a memorandum dated April 5, 1905, showing that lot 5, in block 313, brought a purchase price of $600, less 5 per cent. commission. * * * I find in December where I credited the real estate account of the Houston Heights investment with $522.50, proceeds of lot 4 at $550, less 5 per cent, and two notes for $200. It must have been, according to that, that there must have been $150 paid in cash and two notes of $200."

Charles A. Witt paid the taxes due on the property for the years 1906 to 1917, inclusive. Witnesses Van De Mark, Chatman, Rose, and Drake all testified that in conversations with Charles Witt he referred to the property as his property, his home. Upon the pleadings and evidence the court trying the case without a jury rendered judgment for Mrs. Rebecca Witt against Lottie Witt for the title and possession of the lots and appurtenances thereto, and against Rebecca Witt for the personal property sued for. From the judgment rendered against her Mrs. Lottie Witt has appealed to this court.

The contentions of appellant are that, as it is shown that the lots involved in this suit were conveyed to Charles A. Witt, her husband, by deeds reciting the payment of a substantial consideration to the grantor, the presumption is that such payments were made by the said Charles A. Witt, and that, as he resided on said premises with appellant after their marriage, such premises became prima facie their homestead, and that therefore the recitals in his deed to his mother, Rebecca Witt, hereinbefore set out, do not affect the homestead rights of appellant; that such recitals in said deed are no evidence of the facts so stated as against appellant. She also contends that the deed executed and delivered by Charles Witt to Rebecca Witt and the recitals therein were made for the purpose of defrauding appellant of her homestead rights in said property, and therefore the court erred in holding that Charles Witt held said property in trust for Rebecca Witt and in rendering judgment in her favor for the title and possession of said property.

[1] Neither of these contentions can be sustained. The recitals in the deed from Charles Witt to his mother, Rebecca Witt, are amply sufficient to support the finding of the court that Charles Witt held the property in trust for his mother. They are sufficient to support a finding that Rebecca Witt paid the greater part, if not all, of the purchase money for the lots and house thereon, with the agreement and understanding between her and her son, Charles Witt, that the title thereto should stand in his name, but that it was in truth and in fact her property. They also show that it was at the time agreed that if Charles Witt desired to purchase the property from Rebecca Witt she would convey it to him upon the payment by him to her of the sum of $2,720, together with legal interest thereon from the time such money was invested in said property, and they further show that Charles Witt was unable to make such payments and for that reason he placed the legal title which he held in Mrs. Rebecca Witt, his cestui que trust. The whole contention of appellant is based upon the theory that her marriage with Charles Witt and their use and occupancy of the property in question as their home after such marriage constituted such property their homestead, and hence rendered it impossible for Charles Witt to alienate the same without her joining in the conveyance.

[2, 3] The legal presumption that, as Charles Witt paid the consideration recited in the deed by which the lots were conveyed to him, he became the owner of the property conveyed, is sufficiently rebutted and overcome by his express declaration in his deed to his mother that she paid the same, and that he held the title in trust for her. Property held in trust by Charles A. Witt for his mother, Rebecca Witt, cannot be impressed with homestead rights for his wife, Lottie Witt. Shepherd v. White, 11 Tex. 346; McCreery v. Fortson, 35 Tex. 642; Farmer v. Simpson, 6 Tex. 310.

In the case of Shepherd v. White, supra, the Supreme Court clearly states the rule, in substance, as follows:

If a parent pays the purchase money for property and has conveyance made to the child, the presumption is that the title passes to the child as an advancement to said child. The

presumption is overcome, however, by any written acknowledgment or statement of the child showing that the title was held in trust by him for the parent. This authority also specifically holds that lands held in trust by one cannot be impressed with a homestead right for the trustee or his family.

In discussing this question in the case of Shepherd v. White, supra, Judge Lipscomb says:

"If it was a resulting trust, and the nominal grantee held the land for the use of the real purchaser, the trustee could not acquire, upon the land, a homestead, free from and unincumbered by the trust; he could not claim the protection of the homestead law, any more than he could, if he had been a real purchaser, and taken the deed absolute, but given a mortgage on the land so purchased to his vendor, to secure the purchase money. And in such a case, we have decided that the protection, thrown by our statute, around the possession of the homestead does not attach (see Farmer v. Simpson, 6 Tex. 303) until all previous liens have been satisfied or discharged."

And when the same case was again before the Supreme Court (16 Tex. 164), Chief Judge Hemphill said:

"A question has been raised in this case, relative to the power of the husband to dispose of his homestead without his wife's consent. This restriction applies where the husband has acquired full property in the land, and not where it is charged with preceding equities, or incumbrances. These must be discharged, and they have precedence over the rights of the homestead privilege; and the right of a husband to make arrangements in relation to these incumbrances, or to renounce lands thus burdened or subject to conditions and contingencies, could not be questioned by the wife, in virtue of her remote right which might arise if the incumbrances or conditions were ever discharged or removed, unless in cases where the husband is squandering the property, with the fraudulent design of depriving his wife of a homestead.

"Another question has been made, with reference to the testamentary power of a husband over his homestead lands, without the consent of his wife; and this can be considered when presented in a case where the husband is attempting to bequeath his own lands, and not, as in this case, where the declarations of the son, in the supposed will, were in relation to lands which were not really his own."

In the case of McCreery v. Fortson, supra, the court cites the Shepherd v. White Case with approval, and again reasserts the proposition that no homestead status can be impressed upon the lands of a stranger, and that before one can impress property with a homestead status he must in fact own the title to the property. These cases have been frequently cited by our appellate courts on the several points determined by them, and the rules there laid down have never been modified or in any manner overruled.

In the early case of Farmer v. Simpson, supra, it was expressly held that a homestead is not acquired, within the meaning of the law, until title to the land on which such homestead is established has been acquired, or at any rate until the party is in position to demand title. In Johnson v. Deloney, 35 Tex. 42, it is held that admissions of the nominal purchaser that he paid for lands with money of the plaintiff are evidence to establish the resulting trust in favor of the latter. Whether the nominal purchaser be still living or dead is immaterial, so far as the competency of such evidence is concerned.

To the same effect is the rule stated in 39 Cyc. p. 159, as follows:

"Thus admissions and declarations of the person in whose name property is purchased, made while the title remains in him, are admissible for the purpose of establishing a resulting trust in such property in favor of another, such as his admissions that the property was purchased, or that he holds it, for the benefit of another, or that the purchase money was paid by such other."

There were neither pleadings nor evidence sufficient to have authorized the court to find that the deed from Charles A. Witt to Mrs. Rebecca Witt was executed for the purpose of defrauding appellant, Lottie Witt.

We have reached the conclusion that the judgment should be affirmed; and it is so ordered.

Affirmed.