ELIZABETH JOHNSON AND OTHERS v. EMILY C.
DELONEY AND OTHERS.

1. A resulting trust not being affected by the Statute of Frauds, it may
   be established by parol evidence against the language of the purchase
   deed, and in spite of a sworn denial by the defendant; early cases to
   the contrary having been overruled.   And though such evidence is to
   be received with great caution, yet this caution should not be pressed
   to the degree of excluding the evidence, or impeaching the testimony
   of the witness who deposes to it.

2. See the opinion in this case with respect to the character and quantity
   of parol evidence necessary in this State to establish a resulting trust
   in land, contrary to the import of the written title.

3. Admissions of the nominal purchaser, that he paid for the land with
   money of the plaintiff, are evidence to establish the resulting trust in
   favor of the latter.   Whether the nominal purchaser be still living or
   is dead, is immaterial, so far as the competency of such evidence is
   concerned; but if he is dead, and the plaintiff appears to have waited
   for his death before asserting the trust, that is a circumstance entitled
   to great weight in determining the existence of the trust.

APPEAL from Nacogdoches.   Tried below before the
Hon. M. Priest.

The subject matter of this suit was a tract of eight
hundred acres of land in Nacogdoches county.   The
appellants were plaintiffs, and filed their petition in
February, 1865.   By their petition, they alleged that
the land in question had been purchased by Joseph W.
Summers, father of the plaintiff Elizabeth, with money
inherited by her from her maternal grandfather.

The defendant Emily was the third wife of Summers,.
after whose decease she became the wife of Deloney.
The other defendants were the children of Summers by
Emily, and also Deloney himself.

The answer of the defendants denied the allegations.
of the petition, but was not sworn to.

In view of the rulings, there is no occasion to detail

the particulars of the case. Its general character is clearly indicated by the opinion of the court.

*S. A. Willson* and *F. B. Sexton*, for the appellants.—The attention of this honorable court is respectfully and especially invited to the statement of the plaintiff's ground of action and claim for relief. It is respectfully submitted that her case comes within the class denominated, in elementary works upon equity, "Resulting" or "Implied Trusts." (2 Story's Eq. Juris., §§ 1255 to 1265; also, Adams on Equity, title Implied or Presumptive Trusts.)

The principal question raised by the assignments of error is as to the quantity of evidence required by the rules of law and equity to establish the existence of such a trust. It is admitted that the authorities say the evidence must be clear and satisfactory. It is admitted that it has been decided by the Supreme Court of Texas, that one witness, uncorroborated by circumstances, is not enough. But the furthest extent to which any of the authorities go is, that it (the trust) must be established by the testimony of two witnesses, or of one witness and corroborating circumstances. No authority to which we have had access prescribes the character of the evidence by which the trust is to be proven. No text writer or adjudged cause, which we have seen, goes so far as to say that admissions of the trustee (no matter by how many witnesses proven or by how many circumstances corroborated) are not sufficient to establish the trust. The admissions of Summers, the father of the appellant, Elizabeth Johnson, that he had used his daughter's money in the purchase of the land sued for, and had done all in his power to conceal that fact from her, were proven directly and positively by two witnesses, who were unimpeached;

but the jury were told that this was not enough to satisfy them that thereby a trust resulted in favor of his daughter, which entitled her to the land. This, we respectfully submit, was erroneous. The leading cases on this subject in the Texas Reports, so far as we have been able to find them, are, Mead v. Randolph, 8 Texas, 191; Miller v. Thatcher, 9 Texas, 482; McClenny v. Floyd, 10 Texas, 159; and Cuney v. Dupree, ·21 Texas, 218.

If these are examined and carefully analyzed, they will clearly show that what has been decided, is that one witness alone, swearing to the naked declarations of the trustee, is not enough to establish the trust; but that ·one witness, aided by any corroborating circumstances, however slight, or two witnesses swearing to the naked ·declarations of the trustee, will abundantly prove the existence of the trust. These cases refer to the case of Leach v. Leach, 10 Vesey's R., 17, in which "Sir William Grant did not deem the unassisted oath of a single witness to the mere naked declarations of the trustee sufficient," because "there were no corroborating circumstances in the case." We do not controvert this rule, or object to its application to our case. We had two witnesses swearing to the declarations of the trustee, and many corroborating circumstances, the strongest of which was the whole conduct and treatment of Summers toward his daughter, the appellant. We take the rule of evidence on this subject to be correctly announced by the Supreme Court of Texas in Cuney v. Dupree ·(21 Tex. R., 219), where they say, that in order to enforce a parol trust in opposition to a written deed, "a rule of equity requires that it shall be established with clearness and certainty." We think the facts proved brought our case clearly within the rule of law and

equity, but they were, by the charge of the court, excluded from the consideration of the jury.

We maintain that the whole course of cruel, unnatural and outrageous conduct pursued by Joseph W. Summers towards his daughter Elizabeth, the appellant, was with the fraudulent design and purpose to conceal from her all knowledge of her rights as heir of her mother and grandfather; to keep her in ignorance of them, and to deprive her of all the money or property to which she might be entitled by virtue of those relations, and to convert the same to his own use. The better to effect this wicked purpose, this most deliberately conceived and atrocious fraud, he refused to educate her, denied her the society of his table and fireside, and compelled her to occupy, in his house and family, the position of a servant. In addition to this, he punished her in a most shameful, brutal and horrible manner. In this view the rules and principles of law and equity in regard to fraud are clearly applicable. We refer to the following elementary authorities in this connection: Hill on Trustees (marginal pages), 144–145, 148–159; 2 Story's Eq. Jur., § 1265. In this view of the case, too, how strongly convincing becomes the evidence of Summers' own declarations, made to his confidential agent and adviser, when he was smarting under the lash of an awakened conscience, condemning his bad conduct, and when he was trembling from fear that a justly aroused public indignation might visit upon him the punishment due to his crimes. But the court below, by its charge, excluded this evidence, and did not allow the jury to consider the case at all as effected by the deliberately meditated and long continued fraudulent conduct of Summers. This, we think, was error.

No brief for the appellees has reached the Reporter.

WALKER, J.—The appellant in this court brought her suit as plaintiff below to establish her right to a resulting trust in certain lands described in petition, situated in the county of Nacogdoches. The petition was filed on the sixth day of February, A. D. 1865, and such proceedings were thereinafter had as resulted in a mistrial on the fifth of February, 1869. On March 3, 1871, the cause was again tried to a jury, and resulted in a verdict and judgment for the defendants, from which an appeal is taken to this court. The cause has been managed in the court below with unusual ablity on the part of counsel, both for plaintiff and defendant; nor does it appear from the record that the court, before whom the case was tried, is at all deficient in a knowledge of the law applicable to the case; and yet our attention has been seriously occupied with that portion of the charge found on page thirty-seven of the record, a portion of which reads as follows: "Proof of the admissions of Summers, the grantee in the deed, he being now dead, *are not* (is not) sufficient proof of the fact that the purchase was made with his daughter's money; there must be other facts and circumstances in proof corroborating the truth of such admissions, so as to establish the main fact to a reasonable certainty." We do not deny but that this doctrine was once supported by able authority. And for the purpose of showing how far the court below may have been misled by the opinions of an able writer on "Uses and Trusts," as well as some earlier decisions; and for the purpose of declaring what we deem the rule now to be, we will introduce a few paragraphs from "Lewin on Trust and Trustees." "Should the nominal purchaser deny the trust by his answer, there seems to be no reason why

parol evidence should not be admitted to establish the fact against him ; for, before the Statute of Frauds, parol evidence was undoubtedly admissible, and, as trusts by operation of law are expressly excepted from the statute, by what rule is parol evidence to be excluded ?" In Bartlett v. Pickersgill, 1 Ed. 515, where the defendant denied the trust, Lord Henley said, if the plaintiff had paid any part of the purchase money, he would have admitted the evidence ; and see Edwards v. Pike, 1 Ed. 267. Mr. Sanders (Uses and Trusts, C. 3, § 7, Div. 2) dissents from the doctrine ; but the authorities cited by him to the contrary do not appear to warrant his conclusion. But the solemnity of the defendant's oath will of course require a considerable weight of evidence to overcome its impression. (See Cooth v. Jackson, 6 Ves. 39.) It is laid down by Mr. Sanders, that "if a person at his death leave any papers disclosing the real circumstances of the case, the court will raise the trust, even against the express declaration of the purchase deed. (Uses and Trusts, C. 3, § 7, Div. 2.) We have seen that, according to the latest authorities, parol evidence is, in ordinary cases, admissible against the language of the purchase deed ; but if Mr. Sanders' opinion to the contrary (Uses and Trusts, C. 3, § 7, Div. 2) were well founded, it does not appear how mere papers would satisfy the requisitions of the statute ; for, to have that effect, the writings ought also to be signed by the party. The cases of Ryall v. Ryall, Amb. 413, and Lane v. Dighton, Amb. 409, which are cited for the position, do not at all turn upon the distinction suggested.

It is observed by the same writer, that "after the death of the supposed nominal purchaser, parol proof alone can, in no instance, be admitted against the express declaration of the deed" (Uses and Trusts, C. 3,

§ 7, Div. 2) ; but the cases relied upon in support of·
this doctrine (Kirk v. Webb, Pr. Ch. 84 ; S. C. Freem.
229 ; Heron v. Heron, Pr. Ch. 163; Walcott v. Mark-
ant, id. 168 ; Kinder v. Miller, id. 172; S. C. 2 Vern
440 ; Deg v. Deg, 2 P. W. 414, per Lord King,) do·
not distinguish between proofs in a person's lifetime
and after his decease ; they are certainly authorities
for the exclusion of parol evidence universally ; but in
this respect, as before noticed, they have been subse-
quently overruled. It would seem, upon principle,
that the death of the nominal purchaser cannot affect·
the admissibility of parol testimony, whatever effect it
may have in detracting from its weight ; and we think
this is the rule which must be recognized by this court.
In the case of Cuney v. Dupree, 21 T. R., on page 219,
Justice Roberts, in delivering the opinion of the court,
says :   " For the greater security of property our laws·
require contracts for the sale of slaves and lands to be
in writing.   (Hart. Dig. Art. 1451.)   It has been held,
that although reduced to writing, a verbal trust may
have been annexed to the contract.   To be enforced,
however, a rule of equity requires that it shall be es-
tablished with clearness and certainty.   Otherwise men
would have no security that contracts would stand after·
they had been reduced to writing with the greatest con-
sideration and solemnity.   So guarded have the rules
been on this subject, that such verbal trust will not be
held to have been clearly and certainly established by
the direct testimony of one witness swearing to the ad--
missions of the alleged trustee, unless his testimony be
confirmed by corroborating circumstances."

The cases of Miller v. Thatcher, 9 T. R. 482 ; Mead
v. Randolph, 8 T. R. 191, and McClenny v. Floyd, 10·
T. R. 159, are referred to in approbation of this opinion.

We also concur in the antecedent opinions of this.

court; but we deem it not unwise to suggest that too strict an adherence to stringent and rigid rules, as formerly laid down by the courts of England, might result in the same vice in our jurisprudence which has been so carefully guarded against, by enabling fraudulent trustees to cover up and conceal from their *cestuis que trust*, the interests to which they are in justice and equity entitled.

We quote with great approbation the opinion of Chancellor Kent in J. & H. Boyd v. McLean and wife, (1 Johnson's Chancery R., top page, 245); also, Bottsford v. Burr (id., 440). In these cases the doctrine of resulting trust is most ably expounded. In the former case, the Chancellor uses this language: "This parol evidence is admissible, not only against the face of the deed itself, but in opposition to the answer of the trustee, denying the trust;" and that, it seems, after the death of the nominal purchaser.

Such evidence, however, it is remarked by the Chancellor, is to be received with great caution. This is undoubtedly the correct rule, as laid down by the late English and American authorities.

We can see, however, that the degree of caution meant should not go to the exclusion of the evidence, or the impeachment of the witness, who otherwise stands fair and unimpeached before the jury or the Chancellor.

The witness should be tried by the light of surrounding circumstances; the motive for his evidence should be examined, any special circumstances under which he testifies, his relations to the parties, his opportunity of knowing the truth of that to which he testifies, as well as his own character for truth and veracity.

As for those corroborating circumstances which are to substantiate the testimony of one witness, we find it

difficult to lay down any rule for the government of juries. They may exist in the relation of the trustee to the *cestui que trust*, in their known pecuniary circumstances, in the character of the estate which forms the subject of the alleged trust.

The father may have been known to have received money coming to his child by way of advancement, bequest, inheritance, or otherwise, and the conduct of the parties toward each other, or even the conduct of the supposed trustee, in all matters which might relate to the existence of a trust, are circumstances to be considered by the jury. The case at bar need hardly be discussed upon this principle ; for in this case there were three witnesses swearing to the declarations of Joseph W. Summers, which, if true, would have been sufficient in law to establish a resulting trust in his hands, in favor of his daughter Elizabeth to the lands in controversy.

But we have no fault to find with the verdict of the jury, on the ground that it may have been contrary to the weight of evidence.

The jury may have been justified in holding the evidence of each and all of the plaintiff's witnesses as utterly worthless, or as having been outweighed by defendant's evidence. The only ground upon which we are justified in reversing the judgment, is that previously indicated in this opinion.

Undoubtedly the court below gave too much significance to the circumstance of the death of the supposed trustee, Joseph W. Summers. We must adopt the rule as previously quoted from Mr. Lewin's work on Trusts and Trustees. If one, claiming the benefit of a trust, should appear to sleep upon his rights, waiting for the death of one upon whom he intends to charge a resulting trust, it would doubtless be a circumstance of great

weight upon the mind of the jury in determining the validity of the claim.

Those who represent a deceased trustee, it is true, are deprived of the benefit of his answer; but we cannot attach much importance to the answer of the trustee, who may, by clear and satisfactory parol evidence, be proved to have fraudulently concealed the trust from those entitled to its use.

Lord Coke has defined trust as "a confidence reposed in some other," annexed in privity to the estate of the land, and to the person, touching the land, for which *cestui que trust* has no remedy but by subpœna in chancery. Originally, the faith and integrity of the trustee formed the only guarantee for the due execution of the trust; and in case of implied trust, such is yet to a great extent the fact—their due and proper execution must be left to the honor and integrity of the trustee.

Men have doubtless grown much wiser since the reign of Richard II, but we may well doubt if their morals have greatly improved. It was in this reign that Chancellor Waltham, Bishop of Salisbury, originated the writ of subpœna, by which the trustee could be brought into chancery to answer the charges and allegations of his *cestui que trust;* and we are told by Mr. Lewin, that so soon as this remedy was given, one half the lands in the kingdom of Great Britain vested in feoffees to uses.

Being somewhat familiar with the history of trusts, and knowing the salutary remedial agency which courts of equity have afforded in relieving against the frauds which would have otherwise grown out of them, we are not disposed to close the door against fair and impartial investigation; nor do we intend to relax the rule which we think has been established by an enlightened judiciary. For the reasons given in this opinion, the judg-

ment of the district court is reversed and the cause remanded.

REVERSED AND REMANDED.