[Civil No. 3551.   Filed December 16, 1935.]

[52 Pac. (2d) 1169.]

JULIA C. COLLINS, by Her Guardian Ad Litem, COIT I. HUGHES, Appellant, v. JAMES DEAN COLLINS, Appellee; S. L. FINLEY and C. CLAUDE DYE, Intervening Appellees.

Mr. Will E. Ryan, for Appellant.

Mr. John W. Ray, for Appellee.

Mr. Scott L. Norviel, for S. L. Finley, Intervener.

Mr. John L. Gust, for C. Claude Dye, Intervener.

LOCKWOOD, C. J.—Julia C. Collins, hereinafter called plaintiff, brought suit against James Dean Collins, hereinafter called defendant, to set aside a certain deed to the real estate involved in this action which had been executed by Hattie L. Mosher in favor of defendant under a power of attorney given Mrs. Mosher by the previous record holder of the title, Julia M. Collins, the mother of plaintiff. For some reason not shown by the abstract of record Hattie L. Mosher was brought in as a party defendant, but she defaulted and never answered. S. L. Finley and C. Claude Dye asked leave to intervene in the action on the ground that they were mortgagees of a certain portion of the property involved in the action. Leave to intervene was granted, and the case was tried to the court without a jury. Helen Streitz had also intervened, but by leave of court, her intervention was dismissed without prejudice. Findings of fact and conclusions of law were duly made and judgment was rendered dismissing plain-

tiff's complaint upon the merits, and in favor of interveners Finley and Dye, to the effect that their respective mortgages were good and valid liens upon the property described in the mortgages. Whereupon plaintiff appealed.

There are some fourteen assignments of error which may be separated into three groups. The first group attacks the admissibility of certain evidence; the second questions the sufficiency of the evidence to sustain the findings of the court; and the third disputes the conclusions of law which were drawn from such findings. The abstract of record shows on its face that it is very incomplete, but we will do our best to determine therefrom whether any of the assignments are well taken.

In order that we may discuss the objections properly, we state the different theories of the facts of the case from the standpoint (a) of the plaintiff, (b) of the defendant, and (c) of the interveners, and follow them with the findings made by the trial court.

It is the theory of the plaintiff that the property in question belonged to her mother, Julia M. Collins, by reason of a deed of gift from her grandmother, Hattie L. Mosher, made in 1908; that thereafter her mother gave to her grandmother a general power of attorney to handle all said property; that the grandmother executed a deed of gift in the name of her mother to her father, the defendant herein, without any consideration and without the knowledge and consent of her mother; that thereafter the latter died, so that the property, having belonged to her mother before her marriage to defendant, descended to plaintiff, but that notwithstanding this fact, her grandmother and her father fraudulently mortgaged the property in favor of interveners for the benefit of the grandmother. Her conclusion from this theory

is that she is entitled to have the deed executed by Mrs. Mosher in favor of defendant canceled, and that the mortgages fail, so that she will hold the property in fee simple, clear of any encumbrances.

The theory of defendant is that the property had been placed in his name, without the knowledge and consent of his wife, so that it could be better handled in case of the death of the latter, and that he had no beneficial interest therein, and he wishes to wash his hands of the whole matter, having no objection to plaintiff's claim.

The theory of the interveners is that the property was deeded by Mrs. Mosher to her daughter Julia M. Collins in 1908 for the purpose of defrauding certain creditors of the former whom she believed were about to secure a judgment against her in the courts of Arizona, and was never intended to convey the beneficial title to the daughter; that the suit of the creditors having failed, Mrs. Mosher continued to handle the property as her own in all respects, and when her daughter became of age, which she did at some time before July 20, 1915, she executed the power of attorney above referred to in favor of Mrs. Mosher so that the property could be sold or mortgaged by the latter as she desired, and that the daughter at no time claimed or ever. did have any beneficial interest in the property, it being always agreed and understood between her and her mother that it was in reality the property of the mother. That in 1920, the daughter being in ill health, Mrs. Mosher, acting under the power of attorney aforesaid, deeded the property to James Dean Collins, her daughter's husband, it being the understanding and intention of both parties that he was to hold merely the legal title to the property for the convenience of his mother-in-law, the beneficial title to remain in her at all times, and that

defendant personally executed the note and mortgage to intervener Dye merely as the legal holder of the title, at the request of and for the use of Mrs. Mosher, the beneficial owner of the property, while she executed the mortgage and note to intervener Finley in his name and with his knowledge and consent, but for her own benefit. That thereafter Mrs. Mosher, being heavily involved financially and knowing that she could not meet the mortgages aforesaid, conceived the plan of having her granddaughter claim the ownership of the property involved as the heir of her mother, in order to defeat the mortgages and to secure the property for the granddaughter.

Voluminous evidence, both written and oral, was submitted to the court, and it made very extended findings of fact, too lengthy to be incorporated *verbatim* in this opinion. We therefore summarize these findings so far as they are essential to the proper consideration of the case, as follows: Plaintiff, Julia C. Collins, a minor of approximately 16 years of age at the time of the trial, is the daughter and only child of Julia Winifred Mosher Collins, now deceased, and James Dean Collins, the defendant, and the granddaughter of Hattie L. Mosher. Her father and mother were married in 1914, and lived together as husband and wife until the death of her mother in May, 1920. Her grandmother, father and mother and herself were at all times on the friendliest terms. In the year 1903 Hattie L. Mosher was the owner of the property involved in this action, the same having been conveyed to her some time before that by her father, William Lount. In that year, by a deed executed by her brother as her attorney in fact, she conveyed such property, together with other property, to her mother, Julia A. Lount, the deed reciting a valu-

able consideration, although none in fact was ever paid by the mother. In 1907 Julia A. Lount died, leaving a will in which she devised the property in question to Hattie L. Mosher. On April 30, 1908, the latter executed a deed, conveying it to her daughter Julia W. Mosher. On October 22, 1908, a decree of distribution in the estate of Julia A. Lount was made in the probate court of Maricopa county reciting the deed from Hattie L. Mosher to Julia W. Mosher, and distributing the property in question to the latter. The petition for distribution did not mention the deed, and there is nothing in the decree showing how the court obtained knowledge thereof. Hattie L. Mosher at all times remained in possession of the property and continued to manage it, paying the taxes out of her own funds, collecting the rents and using them for her own purposes. At no time did she make any accounting thereof to her daughter. In 1914 Julia W. Mosher married and a year later gave a general power of attorney to Hattie L. Mosher. This power of attorney was in the broadest possible terms but was not recorded until April 2, 1921. In the year 1918 certain litigation arose between Hattie L. Mosher and her brother William B. Lount, on the one hand, and the city of Phoenix and the Phoenix Railway Company, respectively, on the other hand, and in this suit Hattie L. Mosher testified positively that she was the owner of the property in question. In 1916 she and her brother were involved in other litigation and she swore to the complaint therein, in which she stated that she and her brother owned certain land which includes all of that involved in the present case. Before and at the time of the trial of that action Julia Mosher Collins was visiting her mother in Phoenix, and assisted in measuring a certain irrigation ditch involved in the suit, which ex-

tended over the property described in the complaint, for the purpose of providing certain evidence for hearing in the case. At such hearing Hattie L. Mosher and Julia Mosher Collins both testified. The former swore that she and her brother were the owners of the property and had owned it for many years, while Julia Mosher Collins testified as to certain measurements of the ditch referred to, and other matters, but at no time questioned Hattie L. Mosher's ownership of the property, nor claimed that it was hers in any respect whatever. In 1920 Hattie L. Mosher, claiming to act under the power of attorney from her daughter, conveyed the property described in the complaint, together with other property which she had purchased and taken title to in the name of her daughter Julia Mosher Collins, to her daughter's husband, the defendant herein. Thereafter defendant, acting under the deed from Hattie L. Mosher, as aforesaid, made at least two conveyances of certain property embraced in such deed, although not the specific property involved in this litigation, and with his knowledge and consent the money received for such conveyances was received and retained by Hattie L. Mosher for her own use and benefit. Thereafter, and in 1926, Hattie L. Mosher made a mortgage to intervener Finley, executing the same under a power of attorney which had been given her by defendant Collins and recorded in 1926, receiving the proceeds of the mortgage for her own use. In 1929 it was renewed by the execution of a new mortgage in the same manner. In 1931 a mortgage was given on a part of the same premises in favor of intervener Dye, to secure a note signed by Collins and by Hattie L. Mosher. The mortgage was executed by Collins in person, and the money borrowed went to Hattie L. Mosher for her own use. The

mortgages to interveners Finley and Dye, and to one Helen Streitz, cover practically all the property involved in this case. No administration was ever had of the estate of Julia Mosher Collins. The Finley mortgage was foreclosed in the United States District Court on the 24th day of June, 1932, and the foreclosure has never been set aside but is in full force and effect. The Dye mortgage was foreclosed on the 7th day of February, 1933, and the foreclosure has never been appealed from and is still in full force and effect, but no sale of the property involved in either mortgage has as yet been made, the judgments remaining unsatisfied.

The court further found that it was always understood and agreed between Hattie Mosher and her daughter Julia Mosher Collins that the deed executed by the former to the latter in 1908 should convey the record title only, and that the actual beneficial ownership of the property should remain in Hattie L. Mosher, and in pursuance of said understanding, the latter did remain at all times from said date in the actual possession, control, and management of the property, made improvements thereon, collected the rents therefrom, and paid the taxes, without giving any accounting thereof to her daughter or at any time recognizing that she had any beneficial interest in the property, and that her daughter Julia Mosher Collins at all times, up to the time of her death, recognized her mother's beneficial ownership of the property. That after the death of Julia Mosher Collins, defendant James Dean Collins also recognized the beneficial ownership of Hattie L. Mosher and never made any claim to the proceeds of the mortgages which were executed with his full knowledge and consent, either for himself or for his daughter, and that this suit on behalf of plaintiff was instigated

by the said Hattie L. Mosher for the purpose of defeating the claims of the mortgagees, and that all of the various conveyances, transfers and transactions, as aforesaid recited, were a part of a mere artifice or scheme on the part of said Hattie L. Mosher for the purpose of placing the legal title in other persons, while retaining the real and beneficial ownership for herself.

We now consider the assignments of error as applied to the foregoing findings of fact. Assignment No. 12 is apparently an attempt to question the action of the trial court in admitting certain evidence. This assignment, however, we think, is utterly insufficient to raise any question for our consideration as to the admission of evidence. The only way in which the alleged errors in the trial court in this matter are identified by the assignment is through the following language:

"The appellee mortgagees . . . were permitted to introduce evidence at all times so introduced over the objections of plaintiff's attorneys . . . which became the sole support and basis of findings of fact numbered 17 & 18, and in 19 . . . ; also permitted the introduction . . . of various records, exhibits and extracts from testimony. . . . "

A consideration of this assignment would require that we examine the entire reporter's transcript and all of the exhibits in the case, select therefrom such evidence as bears on findings 17, 18 and 19 and then guess to which part of said evidence the plaintiff refers. It is plain that this in no way complies with the provisions of rule XII of this court, which states:

"All assignments of error must distinctly specify each ground of error relied upon and the particular ruling complained of."

We must, therefore, assume that all of the evidence found in the record was properly admitted by the trial court.

Assignments 1, 3, 6, 11, 13 and 14 question the sufficiency of the evidence to sustain the findings of the trial court to the effect that Hattie L. Mosher from the time of her conveyance of the property to her mother in 1903 and down to the execution of interveners' mortgages, at all times intended to reserve the beneficial interest to the property in herself, and did not intend to convey anything but the naked legal title to her daughter Julia Mosher Collins or her son-in-law James Dean Collins, and that such intention on the part of Hattie L. Mosher was at all times known to and acquiesced in by Julia Mosher Collins and James Dean Collins.

It is unnecessary for us to set forth any part of the evidence in this opinion. We have examined it carefully and think it sufficient to say that the conduct of Hattie L. Mosher as shown by her own testimony, as well as by that of other witnesses and various documentary evidence, and the acts of Julia Mosher Collins during her lifetime, and those of James Dean Collins at all times, are, in our opinion, far more consistent with the findings of the trial court that the beneficial ownership of the property in question was at all times in Hattie L. Mosher, with the full knowledge and approval of her daughter and son-in-law than with plaintiff's theory that the deed of 1908 was a *bona fide* conveyance of both the legal and beneficial title to Julia Mosher Collins. Any impartial person, upon reading the entire record in this case, would be forced to come to the conclusion therefrom either that Hattie L. Mosher, with the knowledge and approval of both her daughter and son-in-law, was at all times the beneficial owner of

the property and dealt with it as such up to the time when she discovered that it was about to be lost through foreclosure and then, in order to release it from the lien of the mortgages of the interveners, for the first time decided to present the theory that she had had no right to handle it as she had during these many years, but that it had always since 1908 belonged, in truth, to her daughter and thereafter to her heirs, or else that with full knowledge that the property was not hers but that of her granddaughter, she deliberately and fraudulently conspired with her son-in-law to secure large sums of money from the interveners Dye and Finley, with the knowledge at all times that the mortgages which she gave them and upon which she knew they relied were pieces of waste paper. We think the first theory is more in consonance with the ordinary conduct of mankind, and is certainly more charitable towards defendant and Mrs. Mosher than the other one is. Where evidence is of such a nature that either of two inferences may be drawn therefrom, we are bound by the one chosen by the trial court. *Moeur* v. *Farm Builders Corp.*, 35 Ariz. 130, 274 Pac. 1043, and cases cited.

█ The final question for our consideration is whether, assuming the findings of fact to be true, the court rendered a proper judgment, for even though the conclusions of law are erroneous or incomplete, yet, if the ultimate judgment reached is the only one which could have been rendered as a matter of law upon the facts as found, it will be sustained. *Rosso* v. *Milwaukee Harvester Co.*, 2 Neb. (Unof.) 212, 96 N. W. 213; *McCormick* v. *Sutton*, 78 Cal. 245, 20 Pac. 543; *In re Estate of Slaughter*, 37 Ariz. 124, 289 Pac. 989. Our conclusion on this point will dispose of the remaining assignments of error,

for they all, in substance, attack only certain conclusions of law reached by the trial court.

It is the theory of interveners that it follows as a matter of law from the facts found by the trial court that a resulting trust was established in favor of Hattie L. Mosher by her deed to her daughter in 1908; that such trust continued during the lifetime of the daughter, and, through the deed made by Mrs. Mosher to defendant, up to the present time; that because of such trust any action taken by Hattie L. Mosher or by others under her instruction and at her request binds the property in question to the same extent and in the same manner as though it had been made in a legal manner by the actual holder of the record title.

Section 404, Restatement of the Law of Trusts, reads as follows:

"Where resulting trust arises. A resulting trust arises where a person makes or causes to be made a disposition of property under circumstances which raise an inference that he does not intend that the person taking or holding the property should have the beneficial interest therein, unless the inference is rebutted or the beneficial interest is otherwise effectively disposed of."

And no writing is required for the creation of such trust. Section 406, Restatement of the Law of Trusts. It is true that while under the common law a resulting trust in favor of the grantor was presumed to arise from the mere fact that no consideration was paid for the transfer, this is not the rule under the modern law of trusts, the inference in such cases being that the grantor intends to make a gift to the grantee, and not that he intends that the grantee should hold the property for his benefit. But this is a mere inference which may be overcome by the proof of facts and circumstances showing a con-

trary intent on the part of both parties. The trial court has found, and we have held such findings to be sustained by the evidence, that the intent did exist on the part of both the grantor and the grantee in the deed from Hattie L. Mosher to Julia W. Mosher, in 1908 and always thereafter, that Julia W. Mosher should not take a beneficial interest in the property. While ordinarily a resulting trust arises either upon the failure of an express trust or where property is transferred by the grantor to a third party at the request of the one who pays the purchase price, yet it not infrequently has been held to arise when a transfer without consideration is made, with the understanding and agreement that the grantee holds the legal title only for the benefit of the grantor. *Kingsbury* v. *Christy,* 21 Ariz. 559, 192 Pac. 1114; *Case Threshing Mach. Co.* v. *Walton Trust Co.,* 39 Okl. 748, 136 Pac. 769; *Hunnicut* v. *Oren,* 84 Kan. 460, 114 Pac. 1059; *Flesner* v. *Cooper,* 39 Okl. 133, 134 Pac. 379; *Gray* v. *Beard,* 66 Or. 59, 133 Pac. 791. But it is urged by plaintiff that the deed of 1908 sets up a valuable consideration and, such being the case, may not be impeached by parol evidence, and in support of this position he cites *Wright* v. *Young,* 20 Ariz. 46, 176 Pac. 58. While of course the ordinary rule is that the fact no consideration was paid may not be shown for the purpose of destroying the operative effect of a deed, yet there are well-known exceptions to the rule. One is where the deed was obtained by fraud. *Toney* v. *Toney,* 84 Or. 310, 165 Pac. 221. Another is when it is as a matter of fact a mortgage. *McLellan* v. *Shinn,* 15 Wall. 105, 21 L. Ed. 87. A third is where possession has never passed under the deed, but has been retained by the grantor. *Bobier* v. *Horn,* 95 Okl. 8, 222 Pac. 238; *Gray* v. *Beard, supra; Flesner* v. *Cooper, supra; Hunnicut* v. *Oren, supra.* These

exceptions are true even in actions between the parties to the deed. But it is almost universally held that as between a third party and one of the parties to the contract it may always be proven by parol evidence that a contract between them is different from what it purports to be on its face. *Arizona-Hercules Copper Co.* v. *Crenshaw,* 21 Ariz. 15, 184 Pac. 996; *Kingsbury* v. *Christy, supra; Hunnicut* v. *Oren, supra; White* v. *Woods,* (Ind. App.) 106 N. E. 536; *Harris* v. *Schnitzer,* 146 Or. 391, 27 Pac. (2d) 1010; *Hart* v. *Meredith,* 27 Tex. Civ. App. 271, 65 S. W. 507. The present case clearly falls within two of the exceptions to the parol evidence rule, for Mrs. Mosher retained possession of the premises at all times, and the interveners herein were neither parties nor privies to the deed. Nor can it be contended that the decree of distribution in the Lount estate added anything to the title of Julia W. Mosher. *Parr* v. *Reyman,* 2r5 Cal. 616, 12 Pac. (2d) 440; par. 1897 (Civ. Code), Rev. Stats. Ariz. 1901.

▮▮▮▮▮ It may be claimed that at the time of the deed of 1908, Julia W. Mosher was a minor, although her exact age does not appear in the record, and that she could not agree to hold the property as a trustee, but since the court found that after her majority she assented to the situation, she would be bound thereby. *Hagan* v. *Powers,* 103 Iowa 593, 72 N. W. 771; *Lundy* v. *Hanson,* 16 Colo. 267, 26 Pac. 816. It is, of course, obvious that plaintiff in this case, claiming only as the heir of her mother, has no better right to the property in question than her mother had at the time of her death. *Richardson* v. *Taylor,* 45 Ark. 472; *Hagan* v. *Powers, supra; Stevens* v. *Fitzpatrick,* 218 Mo. 708, 118 S. W. 51; *Johnson* v. *Deloney,* 35 Tex. 42.

The beneficiary of a resulting trust has power to transfer his interest. Restatement of the Law of Trusts, § 407. *A fortiori*, he may mortgage such interest. It therefore follows that when Hattie L. Mosher made or caused to be made the Dye and Finley mortgages, she bound the realty involved in this action.

We think, therefore, the inevitable legal conclusion from the findings of fact is that the mortgages of interveners Dye and Finley were valid obligations as against the property in question, and plaintiff, defendant, and Hattie L. Mosher were properly estopped from claiming any interest in the property adverse to the mortgages. It is not necessary in this action to determine where the legal title now lies, whether in defendant or plaintiff. Neither, it is evident, has any beneficial interest in the property.

Judgment affirmed.

McALISTER and ROSS, JJ., concur.