437 P.2d 407

Margaret A. Perry MINDERMAN, Individually and Margaret A. Perry Minderman, Administratrix of the Estate of Ted A. Perry, Appellant,

v.

Irma M. PERRY, Executrix of the Estate of Glen Perry and Irma M. Perry, Individually, Appellee.

No. 8592.

Supreme Court of Arizona, In Banc.

Feb. 21, 1968.

Dowdall, Harris & Brown, Tucson, James D. Winter, Phoenix, Steve Kosteck, Jr., Tucson, for appellant.

Kramer, Roche, Burch & Streich, Phoenix, Alpheus L. Favour, Prescott, for appellee.

BERNSTEIN, Justice.

This matter comes to us on appeal from a judgment rendered by the Superior Court of Yavapai County wherein the appellant had sought to impose a constructive trust based on an alleged breach of contract to make a will and to keep the same in effect.

Glen Perry, now deceased, and Margaret A. Perry Minderman, hereinafter referred

to as Margaret, were married in 1930; acquired the Palo Verde Ranch in Pinal County in 1931. Ted, their only child, was born in 1933. They purchased a home in Tucson in 1939, and in 1940 were divorced in Pinal County. A property settlement agreement was entered into by Glen and Margaret and the court approved the agreement and found it provided a "fair and equitable settlement" of the property rights of the parties.

The terms of the property settlement agreement pertinent to the controversy now before us were that Margaret was to receive the house in Tucson and a $7,000 mortgage on the real estate in Pinal County which Glen was to retain. Margaret was to have the care and custody of the son, Ted, except during the summer months and Glen was to be responsible for Ted's maintenance, support and education. The property settlement further provided:

"That they will, upon the execution of this Agreement, make their Wills, the first party giving and bequeathing to Ted A. Perry, the said minor child of the parties hereto, the said Realty Mortgage given to her by second party on the latter's real estate in Pinal County, Arizona, as of this date, or the proceeds thereof, and the second party giving, devising and bequeathing to said Ted A. Perry all of second party's property."

Both Glen and Margaret further released and relinquished to each other and each other's heirs, executors, administrators and assigns all right or claim by way of inheritance, descent or community interest in and to the property of the other then owned or thereafter acquired by the other, and all other rights of whatsoever kind and nature growing out of their marriage relation. Glen executed his will in 1940 leaving all his estate to Ted as required by the property settlement.

In 1948 Glen married Irma M. Perry, the appellee. On January 27, 1958 the son, Ted, his wife and their only child were all killed in a plane crash. Ted died intestate, leaving his mother, Margaret, and his father, Glen, as his only heirs.

After Ted's death, Glen revoked his will and executed a new will which left essentially all of his property to Irma. In February, 1958 Glen and Irma sold the Palo Verde ranch for a substantial price and invested the proceeds in other property taking title in the name of Glen and Irma, husband and wife, as joint tenants with right of survivorship.

Glen died in April, 1962, his will was admitted to probate and Irma was appointed executrix. Margaret filed creditors' claims both in her own name and in her capacity as duly appointed administratrix of Ted's estate. Upon rejection of these creditors' claims Margaret instituted suit to impose a constructive trust based on an alleged breach of contract to make a will. This appeal is taken from the judgment rendered against her in that action.

Margaret poses three assignments of error. At her request the trial court made specific findings of fact and conclusions of law. Margaret first urges that the trial court's Conclusion of Law No. 5:

"5. The devise and bequest to Ted Perry which appeared in Glen Perry's then existing will lapsed upon the death of Ted Perry for the reason that Ted Perry was not survived by lineal descendants and the Anti-Lapse Statute (ARS 14–133) did not save such devise and bequest."

was erroneous because the doctrine of lapse is a doctrine of the law of wills and is not applicable to a case involving rights created under a contract to make a will.

■ We agree. The issue as to the application of A.R.S. § 14–133 [1] was not

---

1. "14–133. Devise or legacy to person predeceasing testator who leaves descendants surviving testator

When a testator devises or bequeaths an estate or interest to a child or other descendant, and such devisee or legatee dies during the lifetime of the testator,

before the trial court nor is it before this court. This is an action for alleged breach of contract and not a will contest in probate. A contract to make a will is controlled by the same rules and principles as other contracts, Mullins v. Green, 143 W. Va. 888, 105 S.E.2d 542; Merchants National Bank of Mobile v. Cotnam, 250 Ala. 316, 34 So.2d 122.

"Once the contract has been entered into the relationship of the parties and the nature of the interest created should be analysed in terms of contract principles. Failure to adhere to this rule and the attempt in some quarters to treat the transaction as a testamentary, yet enforceable, arrangement is the source of much of the confusion so prevalent in this area." * * *

"The substance of the thing agreed upon is the transfer of property to the promisee at the death of the promisor. The remedy granted by the courts seeks either to accomplish that result or to award damages for its failure. The fact that a will was the vehicle through which it was contemplated that the desired result would be achieved is merely incidental." Contract to Devise or Bequeath as an Estate Planning Device, Bertel M. Sparks, 20 Mo.Law Rev. 1.

■ The trial court's judgment, however, did not rest solely on Conclusion of Law No. 5, supra. In keeping with our established rules, if the ultimate judgment was correct as a matter of law it will be sustained, Rule 61, Rules of Civil Procedure, 16 A.R.S., Collins v. Collins, 46 Ariz. 485, 52 P.2d 1169. A wrong reason for a correct ruling is not reversible error. Wigley v. Whitten, 78 Ariz. 88, 276 P.2d 517, opinion adhered to 78 Ariz. 224, 278 P.2d 412.

Margaret's second and third assignments of error are based on the court's Conclusions of Law Nos. 4 and 7:

"4. The duty to perform the mutual promises to will certain property to Ted Perry was discharged by the supervening impossibility resulting from the death of Ted Perry."

"7. Margaret Perry Minderman is not entitled to have a constructive trust imposed upon any property which the defendant Irma M. Perry now holds, either in her own right or as Executrix of the Estate of Glen Perry."

Margaret and Irma are in agreement that the basic issue in this case is the effect of the untimely death of Ted, before the death of his father, in respect to the contract to make a will provision of the property settlement agreement. The evidence is clear that Glen had fully complied with all provisions of the property settlement up to and through the time of Ted's death, including that of executing and maintaining a will for twenty years which devised and bequeathed all of his property to Ted.

Irma contends, and the trial court found that Ted's death constituted the happening of an unforeseen contingency which made it impossible for Margaret and Glen to perform their mutual promises to leave their property to Ted by will. Irma urges that the mutual promises were to will to Ted, personally, not his estate, his next of kin, and certainly not Margaret and Glen.

The doctrine of impossibility of performance dates back to the celebrated case of Taylor v. Caldwell, 3 Best & S. 826 (1863) wherein Caldwell was relieved of liability in damages for non-delivery of a music hall to Taylor because the hall had been destroyed by fire. Since that case the courts have grown increasingly liberal in their construing of what constitues "impossibili-

leaving descendants surviving the testator, the devise or legacy shall not lapse by reason of such death, but the estate so devised or bequeathed shall vest in the descendants of the legatee or devisee as though he had survived the testator and had died intestate."

ty" or frustration of purpose, see Corbin on Contracts, Discharge, Impossibility, § 1320. According to the American Law Institute's Restatement of Contracts, where performance of a promise becomes impossible because of facts which the promisor had no reason to anticipate and for the occurrence of which the promisor is not at fault his duty is discharged unless a contrary intention has been manifested; and, more specifically, where the existence of a specific person is essential to the performance of a promise the duty to perform that promise is discharged if the person is not in existence at the time for seasonal performance, unless a contrary intention is manifested or the contributing fault of the promisor causes the nonexistence, §§ 457, 460.

Margaret contends, however, that the death of a beneficiary of a contract to make a will does not constitute an impossibility of performance. For authority she cites In re Traub's Estate, 354 Mich. 263, 92 N.W.2d 480; Potter v. Bland, 136 Cal. App.2d 125, 288 P.2d 569; Guenin v. Lakin, 146 Cal.App.2d 855, 304 P.2d 157. We have read these three cases and find them readily distinguishable from the case at bar. In none of them is the doctrine of impossibility considered or discussed. Thus, they are neither authority for or against the applicability of this established doctrine of contract construction insofar as it may relate to contracts to make a will. Nor does ei-

ther the Traub, Cuenin or Bland decisions stem from a situation arising out of a property settlement agreement adjudicated and approved by a court of competent jurisdiction. In all three of the decisions cited by Margaret the bargained for exchange was received by the promisor, who subsequently failed to carry out his promise to will. Such is not our case.

In the case before us the parties by separation agreement sought to (1) arrive at a complete property settlement (2) provide for the support, maintenance and education of their son (3) provide for Ted's inheritance through the making of wills "upon the execution of this [property settlement] Agreement," (4) each give complete release to the other.[2]

■ Margaret has, long since, received all that she personally bargained for under the agreement. So has Glen. Their purpose in providing for Ted's personal inheritance has been frustrated and made impossible by his premature death. We hold that when Ted died without leaving descendants surviving both Margaret and Glen were discharged of their duty, under their property settlement agreement, to will to Ted.

■ It is true that Ted's death did not make it impossible for Glen to leave the will devising and bequeathing all to Ted but the law does not require a futile act. Ted left no descendants surviving. Therefore if the will had been left by Glen, and

2. The separation agreement provided for a "full and complete settlement of all property rights between the parties * * *":

"That she hereby releases and relinquishes unto second party, his heirs, executors, administrators and assigns all right or claim by way of inheritance, descent, or community interest under the laws of the State of Arizona, or elsewhere, in and to all the property of second party now owned by him or hereafter acquired by him, and all other rights of whatsoever nature growing out of the marriage relation of the parties hereto * *·* *"

* * * * *

"That he hereby releases and relinquishes unto the said first party, her

heirs, executors, administrators and assigns, all right or claim by way of inheritance, descent or community interest under the laws of the State of Arizona and elsewhere in and to the property of said first party now owned or hereafter acquired by her, and all other rights of whatsoever kind and nature growing out of said marriage relation * * *"

* * * * *

"That they and each of them will sign any and all papers necessary to carry out the provisions of this agreement, and necessary to effect a complete property settlement, both present and future, between the parties hereto."

probated, the devise and bequest to Ted would have lapsed under the provisions of A.R.S. § 14–133, supra, and such lapse would have accomplished nothing for Margaret.

More than twenty-five years ago Margaret and Glen contracted away their individual personal rights to the properties settled on the other when they released and relinquished to each other and each other's heirs, executors, administrators and assigns all right to claim by way of inheritance, descent or community interest in and to the property of the other then owned or thereafter acquired by the other, and all other rights of whatsoever kind and nature growing out of their marriage relation. For this court to now hold that Margaret can assert an interest in Glen's estate, based on a promise to make a testamentary gift to Ted personally, would be to completely thwart the expressed intent of the property settlement agreement. Further, such a holding would in effect collaterally amend and upset the judicial decree of divorce which incorporated by reference this agreement and found it to be just and equitable, see Berman v. Thomas, 41 Ariz. 457, 19 P.2d 685.

From what we have concluded it follows that there was no breach of contract. Under such circumstances no constructive trust can be imposed. The discharge by supervening impossibility of Glen's duty to will to Ted does not give rise to unjust enrichment to Glen or Glen's estate to the detriment of Margaret as she has, in like manner, been discharged of her mutual promise to will.

Judgment affirmed.

STRUCKMEYER and LOCKWOOD, JJ., concur.

McFARLAND, Chief Justice (dissenting):

I must respectfully register my dissent to the decision of the majority. This Court held that Margaret was not entitled to any equitable relief either in her capacity as administratrix of Ted's estate, or individually. I disagree with the result of the majority, and also take exception to the reasons urged by the majority to support that result.

In my view Margaret is entitled to have a constructive trust imposed for her benefit in her individual capacity as promisee to the separation agreement. Both the guiding principles of contract law and the equities presented by the facts of this case compel this result. The majority and the trial court properly applied the doctrine of supervening impossibility as a defense, but stopped prematurely and did not follow through by applying the necessary counterpart of that defense which is the doctrine of restitution or recovery of consideration. This is not merely a case in which the parties entered into a simple executory contract without rendering performance under the contract terms. Rather, it is a case in which each of the parties had rendered substantial performance under the terms of the agreement through a significant exchange of consideration, and thereby had locked themselves into a partially-executed contract.

In addition to the facts set forth in the majority opinion there are other salient and undisputed facts in the record which need to be set forth in order to bring the relative positions of the parties in this controversy into focus.

Shortly after Glen and Margaret were married in 1930, they acquired the Palo Verde Ranch, hereinafter called the Ranch, which was located in Pinal County. Between the first years of their marriage and 1940, Glen and Margaret expanded the size of the Ranch through hard work and sacrifice, and by acquiring land from homesteaders who were leaving the area. The 1940 separation agreement—and particularly the mutual-will provision whereby Glen agreed to will all his property to Ted —forms the basis for the present controversy. This agreement purported to settle all their property rights and obligations. In addition to the provisions of the agree-

ment outlined by the majority, other material provisions were *that Margaret would convey to Glen all of her right, title and interest in and to all her property in Pinal County, which included the Ranch; that she would forever waive all rights to alimony;* that she would receive certain property, including a mortgage on the Ranch in the sum of $7,000, and a furnished house in Tucson which had an estimated value of $5,000; and *that Glen would make Ted the beneficiary of all his life-insurance policies.*

At the time the separation agreement was entered into the chief asset of the Perry family was the Ranch, which was community property. At that time it was not economically feasible to divide the Ranch, which included the cattle, and operate a ranch half the size of the Palo Verde. The testimony discloses that the value of the Ranch at that time was in excess of $130,000, and, by the terms of the contract, Margaret conveyed her interest in the Ranch to Glen. Also, Glen received the right to have the entire Ranch, and derive the profits from its operation during his life.

At the time of the execution of the separation agreement, Glen and Margaret neither considered nor foresaw the possibility that Ted might predecease either or both of them. The intention of both the parties to the agreement in willing property to Ted was to provide for his security and protection, so that "he would never have to want."

There were no provisions in the separation agreement whereby either Glen or Margaret agreed specifically to will any of their property to Ted's heirs or to Ted's estate in the event that Ted would be unable to take through their respective wills. Neither were there any provisions whereby Glen agreed to will any property to Margaret, nor whereby Glen could will any of his property to any one other than Ted. *Furthermore, there were no provisions whereby any forfeiture should occur upon any conditions.*

Glen was married for the third time in 1948; he married appellee, Irma M. Perry.

After Ted's death in 1958, Glen and Irma sold the Ranch for a price of $300,000.

Both Glen and Margaret had performed according to all the provisions of the separation agreement, except as to the mutual-will provision. Neither Margaret nor Irma have made any attacks on the validity of the separation agreement. That separation agreement stands as a valid contract between Glen and Margaret.

First, I concur with the majority's conclusion that the Perry's intention was to see that Ted personally as a third-party beneficiary was to receive the benefits of the mutual-will provision, and that Ted's death constituted a supervening impossibility or frustration of contract purpose which excused Glen's nonperformance under the mutual-will provision. Hence, there was no breach of contract on the part of Glen for failure to leave by will all his property to Ted. In addition, the trial court also made the conclusion that Margaret, neither individually nor as administratrix, was entitled to have a constructive trust imposed upon any property which defendant Irma held, in her own right, or as executrix of the estate of Glen Perry. While I agree that Ted's estate is not entitled to a constructive trust in its favor, I disagree with the trial court's, and the majority's refusal to impose a constructive trust in favor of Margaret individually as promisee.

Margaret sought equitable relief in her individual capacity, and, although the breach of contract theory she advanced as a reason for an equitable remedy has been rightfully discarded, her need and right to equitable relief cannot be cast aside. Since Irma set up the defense of supervening impossibility which has been accepted, she should be bound by the natural and reasonable consequences which flow from that defense. That consequence is the application of the doctrine of restitution.

The court has held that the mutual duties to will to Ted were discharged by reason of Ted's untimely death. Appellee Irma has urged that the court so hold, and to do so by following the tenets presented

in the Restatement of the Law of Contracts. I am compelled, under the equities of this case, to follow other salient principles set forth in the Restatement. The Restatement of the Law of Contracts dealing with restitution with regard to impossibility reads as follows:

"§ 468. RIGHTS OF RESTITUTION.

\* \* \* \* \* \*

"(2) Except where a contract clearly provides otherwise, a party thereto who has rendered performance for which the other party is excused by impossibility from rendering the agreed exchange, can get judgment for the value of what he has rendered, less the value of what he has received, unless what he has rendered can be and is returned to him in specie within a reasonable time.

"(3) The value of performance within the meaning of Subsections (1, 2) is the benefit derived from the performance in advancing the object of the contract, not exceeding, however, a ratable portion of the contract price.

\* \* \* \* \* \*

"*Comment on Subsection (2):*

\* \* \* \* \* \*

"c. If one party has not fully performed, and the other is excused by impossibility from performing \* \* \* the duty of the former is discharged. Whether full performance by him is thus stopped or full performance by him has been rendered, in either event the *other party's excuse from giving the agreed exchange does not enable him to keep what he has got without paying its value. He must pay the value unless he returns it.* [Emphasis supplied.]

\* \* \* \* \* \*

"*Comment on Subsection (3):*

"d. Since there is no fault on either side, the loss due to impossibility or frustration must lie where it falls. Neither party can be compelled to pay for the other's disappointed expectations. But, on the other hand, *neither can be allowed to profit by the situation.* He must pay

for what he has received. The amount that he must pay is gauged by the extent that what he has received forwards the object of the contract. \* \* \*" Restatement, Contracts § 468, Comments 1 and 2 (1932) [Emphasis Supplied.]

Many courts support this view. Auger v. Chapdelaine, 106 N.H. 246, 209 A.2d 710; Automobile Ins. Co. v. Model Family Laundries, 133 Conn. 433, 52 A.2d 137, 170 A.L.R. 975. See also 144 A.L.R. 1317. Annotation:

"Right to recover consideration paid or performed upon contract, performance of which by other party is excused by reason of supervening impossibility."

The basic rationale backing the Restatement's position as to restitution and the case law as to recovery of consideration is that when there is an executed or partially-executed contract where either one or both of the parties has been discharged of any remaining duty of further performance by reason of supervening impossibility or frustration of contract purpose neither one of the parties is to exact a profit at the expense of or to the detriment of the other. The majority has treated the instant case as if this were an executory-contract situation where neither party had performed to any extent. But this is not the situation that actually exists. The majority is allowing Irma—by virtue of Glen's discharge—to retain what Margaret has given up. Margaret had fully performed all that the agreement required her to do except will the value of $7,000 to Ted, but Glen had yet to render a major portion of the contemplated performance *which was to will all his property to Ted.* In summary, Margaret had very little left to perform, and Glen had a great deal left to perform at the time of Ted's death.

Since this is an action in equity to impose a constructive trust, and since the court has applied contract principles in dealing with the agreement in question, the court should have been mindful of those contract principles in concert with equity as to restitution in determining whether a constructive trust should have been imposed, and if so in what

amount. In doing this an examination of the intent of the parties and the exchange of consideration contemplated at the time of contracting should have been made. As we have seen, Margaret received about $12,000 worth of property, waived forever her rights to alimony, and gave up her interest in the Ranch which the testimony shows to have had a value of about $130,000 at the time of the separation agreement. Following those assumptions that means she only received about ten per cent of the family assets, compared to ninety per cent of the assets which Glen received. Margaret gave up a substantial interest in order to have her son receive the property upon Glen's death. Both expected this would happen, and this was part of the consideration of the contract. It is also to be remembered that Glen had ownership of the Ranch, and received the use of it, and obtained the rents and profits produced by the Ranch during his entire life.

When Irma married Glen she married him subject to his obligations under the prior separation agreement. Irma's right to any of Glen's property was limited by Glen's own rights to his property which were circumscribed under the separation agreement. If Ted had not predeceased Glen and Margaret, he would have obtained all of Glen's property under the terms of the separation agreement, and Irma would have received none of Glen's property. And, even though Glen was discharged from the duty of leaving his property to Ted, his rights as to the property were still governed by the separation agreement. Irma is certainly entitled to a portion of Glen's property but it should be only that portion remaining that Glen had a right to, and Glen had a right only to property remaining after his rights under the agreement with Margaret had been settled.

Under the majority's decision and reasoning, Margaret would not be entitled to any recovery of consideration even if Ted had died two weeks after the Perrys had entered into the separation agreement. If that had occurred, Glen would have had Margaret's one-half interest in the Ranch. Margaret could never claim any alimony. Glen would have had all the benefits without having to perform substantially his end of the bargain. And it was the expectation of the performance of devising property to Ted which was a substantial and material part of their agreement. It would be grossly unfair to let Glen keep the value of all he had received when he has been discharged as a matter of law from the obligation of rendering a substantial part of the agreed exchange by reason of supervening impossibility for which neither party was at fault.

It would be even more unjust to allow Irma, Glen's third wife, to enjoy an unexpected windfall which was in part made possible and paid for by Margaret's sacrifice of her interest in the Ranch which was motivated by the love of a mother for her child. All of this was part of the consideration on which the contract was based. If there ever was a case of unjust enrichment, allowing Irma to have all of the property is it. One of the major reasons Glen and Irma were able to sell the Ranch for the tidy sum of $300,000 was because the Ranch had not been divided in half in 1940. It certainly cannot be said that it was the intent of either Glen or Margaret that *Irma should receive the benefits of the contract.*

As this court stated in Linder v. Lewis, Roca, Scoville & Beauchamp, 85 Ariz. 118, 333 P.2d 286:

"* * * Even where actual fraud does not exist in the acquisition of property, a constructive trust will arise whenever the circumstances make it inequitable that the property should be retained by the one who holds the legal title. Eckert v. Miller, 57 Ariz. 94, 111 P.2d 60; MacRae v. MacRae, 37 Ariz. 307, 294 P. 280. The forms and varieties of these trusts are practically without limit and the principle is applied wherever it is necessary for the obtaining of complete justice. * * *"

See also Markel v. Phoenix Title & Trust Co., 100 Ariz. 53, 410 P.2d 622. The evi-

-dence as to the need for a constructive trust is clear and convincing, and the circumstances are such that Irma would be unjustly enriched at the expense of Margaret, if Irma would be allowed to retain all of Glen's property. Margaret is entitled to restitution or recovery of consideration in concert with the equities between her and Glen.

I therefore would hold that a constructive trust vested upon the death of Glen for Margaret's benefit with Irma as constructive trustee on certain property she now holds, both individually and as executrix of Glen's estate. The constructive trust exists on Glen's interest in property acquired, or money received and retained from the proceeds of the sale of the Ranch in the amount of one-half the value of the Ranch at the time of the separation agreement, minus one-half the value of the house ($2,500) and minus $7,000 Margaret received from the mortgage on the Ranch, with interest on the amount of the trust from the date of Glen's death.

On one hand, the majority says that Margaret has received all she personally bargained· for under the agreement. On the other hand, it says that the substance of the thing bargained for was the transfer of property by means of a will to Ted personally as third-party beneficiary under the mutual-will provision. These propositions are more than slightly inconsistent. The mutual-will provision can be analogized to a life-insurance policy on Glen's life, with the premiums or consideration for the policy paid by Margaret, and with Ted as the beneficiary of the policy. Part of the consideration received by Margaret for her payment on the policy was the fact that Ted was protected or "insured" while Glen lived, and there was no doubt comfort to be found in this assurance. This assurance was based on the fact that Glen was contractually bound to make actual transfer to Ted. It would be most unreasonable to believe that Margaret would have paid the premiums knowing that Ted would not actually receive the transfer of property and money upon Glen's death. Hence I agree that the assurance that there would be a transfer was part of the thing contemplated, but the mere assurance— standing alone—without an actual transfer was not all that was bargained for or envisioned. Margaret was not paying the premiums merely for the assurance, or peace of mind, that Ted would be protected during his life. The majority is allowing Glen to name a new beneficiary without even consulting with Margaret who has paid for the policy. Under the majority's decision Margaret got all she bargained for, and it reasons that all she bargained for was the assurance that Ted would be economically protected while he lived. Yet the majority also states that the object was to effect an actual transfer to Ted, and then the majority applies the doctrine of supervening impossibility discharging Glen from the duty to transfer based on the fact that the thing bargained for was the transfer itself. The only conclusion I can come to is that she did not receive all she bargained for; that it was impossible to deliver the thing she bargained for—hence there was a discharge of the duty on the part of Glen to perform. The mere fact that the parties were discharged from their respective duties to will shows that there was something else to be done under the contract. It is necessary then to adjust the balance of consideration received for the consideration given up so that neither party may profit from the other. This may be done properly by following the principle of restitution and imposing a constructive trust.

The majority stated that the trial court's decision as to lapse was erroneous because the doctrine of lapse is a doctrine of the law of wills and is not applicable to a case involving rights created under a contract to make a will and that this issue was not before either the trial court or this Court. With this proposition I agree. However, the court goes on to say that Glen was not required to do a futile act by leaving a will which named Ted as beneficiary because

if such a will had been left and probated the devise and bequest to Ted would have lapsed under the provisions of A.R.S. § 14–133. To be consistent I must state that this question is not before this Court, and, furthermore, the bequest would not lapse *because* of this statute, although generally there is a possibility that lapses of certain bequests might otherwise occur under common-law rules, because the statute would not save the bequests from lapsing. A.R.S., § 14–133 is an antilapse statute which carves a legislative exception out of the common-law rule of lapse. This statute saves certain bequests from lapsing as they ordinarily would under the common-law rule, where there are lineal descendants surviving a legatee. This statute does not negative the possibility that a legatee's surviving lineal ascendant may take the bequest under the common-law rules, especially if that legatee is a creditor legatee.

One of the common-law exceptions to lapse is that of a creditor legatee. Ted might reasonably be classified as a creditor legatee by virtue of his position as a third-party beneficiary under a contract for valuable consideration. So we can see that even under the law of wills there are other reasonable alternatives to the conclusion that Glen would have done a futile act.

To impose a constructive trust would in no way violate the terms of the separation agreement or constitute a collateral attack on the divorce court's conclusion that the agreement was a fair or equitable settlement of the property rights and obligations between Glen and Margaret as the majority opinion suggests.

Margaret's rights as promisee or mutual promisor under the separation agreement arise from the agreement itself. The majority asserts that to allow Margaret to claim an interest in Glen's estate would thwart the expressed intent of the property-settlement agreement whereby each party released and relinquished to each other and each other's heirs, executors, etc., all right to claim by way of inheritance, descent, or community interest in and to the property of the other then owned or thereafter acquired by the other and all other rights of whatsoever kind and nature growing out of their marriage relation. However, it is the contract itself which extinguishes certain rights and gives rise to other rights. Margaret's claim is based on the rights she has obtained from the contract itself. Her claim in no way contradicts the terms of the separation agreement but is a justifiable pursuit of rights given to her by that agreement.

The separation agreement did provide for a fair and equitable settlement of the property rights and obligations between Glen and Margaret. This conclusion is founded upon *all* the terms in, and consideration passing from, the contract. However, an important, material, and essential part of that contract was the provision requiring each party to will certain property to their son.

Accordingly, I would have the case reversed, and remanded to the trial court below for the purpose of determining the actual value of the Ranch at the date of the separation agreement, with instructions to impose a constructive trust for Margaret's benefit as described above.

UDALL, V. C. J., concurs in this dissent.